367 A.2d 222

COMMONWEALTH of Pennsylvania, DE-
PARTMENT OF ENVIRONMEN-
TAL RESOURCES

v.

BETHLEHEM STEEL CORPORATION,
Appellant.

Supreme Court of Pennsylvania

Argued Sept. 21, 1976.

Decided Nov. 24, 1976.

Rehearing Denied Jan. 3, 1977.

580

582

Paul A. Manion, Pittsburgh, for appellant.

Robert E. Yuhnke, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■■ This is an appeal from an order of the Commonwealth Court overruling preliminary objections of the Bethlehem Steel Corporation (Bethlehem) to the petition of the Department of Environmental Resources (DER) seeking enforcement of a consent order.[1] The order provides that, in certain circumstances, Bethlehem may apply to DER for modification, and that any action taken on such an application can be appealed to the Environmental Hearing Board (EHB) and the courts. The question before us today is whether the Commonwealth Court has jurisdiction to entertain an action for enforcement of the consent order during the pendency of an appeal from DER's decision to deny an application for modification.[2] We conclude that it does, and affirm.

1. *Commonwealth of Pennsylvania, Department of Environmental Resources v. Bethlehem Steel Corporation*, 23 Pa.Cmwlth. 387, 352 A.2d 563 (1976).

2. This Court has jurisdiction pursuant to the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672 (1962), which provides for appeal from preliminary determinations on questions of jurisdiction as if those determinations were final judgments.

   DER brought this action pursuant to section 10(a) of the Air Pollution Control Act, Act of October 26, 1972, P.L. 989, § 10, 35 P.S. § 4010(a) (Supp.1976), which confers jurisdiction on the Commonwealth Court for enforcement of orders "from which no timely appeal has been taken or which has been sustained on appeal." Bethlehem contends that section 10(a) does not confer jurisdiction to enforce this order during the pendency of its appeal of DER's rejection of its application for modification.

   In support of its claim that the Commonwealth Court does not have jurisdiction, Bethlehem advances arguments based on the doctrines of primary jurisdiction, exhaustion of administrative remedies, and ripeness for review.

   These questions may not be jurisdictional in the strictest sense; they involve issues the courts may have power to decide, but refrain from deciding until after the agency has had an opportunity to take action on the matter. See 3 K. Davis, Administrative Law Treatise § 19.01 (1958) (primary jurisdiction) [hereinafter cited as Davis]. "Court jurisdiction is not thereby ousted, but only postponed." *United States v. Philadelphia National Bank*, 374 U.

## I.

The consent order is an air pollution abatement order agreed to by DER and Bethlehem, after extensive negotiations, on February 25, 1972. DER approved air pollution abatement plans submitted by Bethlehem to implement the order. These plans required Bethlehem to cease operation of its Franklin Coke Oven Battery No. 17 at its Johnstown Plant by May 31, 1975. Bethlehem also was required to submit an application for a permit to construct equipment to control emissions at Coke Oven Battery No. 5 at its Bethlehem Plant by March 1, 1975.

By the terms of the consent order, Bethlehem is entitled to apply for modification of the order or the modification plans in certain circumstances. If DER rejects the application for modification, Bethlehem may appeal to the EHB and the courts.[3] On September 17, 1973,

S. 321, 353, 83 S.Ct. 1715, 1717, 10 L.Ed.2d 915 (1963) (primary jurisdiction); cf. 3 Davis, supra at 2 n. 7 (when the doctrine of exhaustion of administrative remedies applies "judicial interference is withheld until the administrative process has run its course").

On the other hand, these doctrines do relate to the relative competency of the courts and administrative agencies to make an initial determination, and relate to whether the court will reach the merits of the case. See *Studio Theaters, Inc. v. Washington*, 418 Pa. 73, 209 A.2d 802 (1965).

We need not determine whether these doctrines are questions of jurisdiction within the meaning of 12 P.S. § 672 (1962). Bethlehem contends that these doctrines apply because of the possibility that the order will be modified as a result of the appeals pending before the EHB. As such, Bethlehem's arguments that jurisdiction should be withheld pending further administrative action essentially amount to an argument that the order should not be treated as final, i. e., not one "from which no timely appeal has been taken" within the meaning of section 10(a) of the Air Pollution Control Act. Thus the doctrines of primary jurisdiction, exhaustion and ripeness as presented in this case, cannot be separate from the question of the applicability of section 10(a) of the Air Pollution Control Act.

3. Paragraph 9 of the order reads:
"9. Upon application of Bethlehem Steel Corporation the provisions of this order, and plans and schedules submitted and approved hereunder, may be modified by the Department, when

Bethlehem applied for an extension of time to continue operating Franklin Coke Oven Battery No. 17 at its Johnstown Plant beyond the scheduled termination date. DER denied this application on February 18, 1975, and Bethlehem appealed to the EHB.

In the meantime, Bethlehem adopted a change in corporate planning which called for continued operation of the Franklin Coke Oven Batteries, and efforts were made to negotiate a resolution of the differences between Bethlehem and DER. Bethlehem also applied for an extension of time for compliance with the plans relating to Coke Oven Battery No. 5 at its Bethlehem Plant. DER denied this application on March 6, 1975.

On May 15, 1975, after further negotiations, Bethlehem submitted to DER proposed modifications of the original abatement plans applicable to both the Coke Oven Battery No. 5 at its Bethlehem Plant and to the Franklin Coke Oven Battery No. 17 at its Johnstown Plant. As this application superseded its earlier application, Bethlehem stipulated to dismissal of the earlier appeal pending before the EHB. On June 16, 1975, DER denied Bethlehem's latest requests for modification, and Bethlehem's appeal to the EHB from this denial is still pending.

Finally, on July 25, 1975, DER filed a petition to enforce the consent order in the Commonwealth Court. Bethlehem filed preliminary objections, raising jurisdic-

A. delivery or installation of equipment is delayed by events not in the control of Bethlehem Steel Corporation;

B. revision of the plans and schedules submitted or approved is necessary to incorporate changes in technology or corporate planning to achieve within the time specified in paragraph 5 hereof, significant improvement in air pollution control; or

C. air pollution control standards applicable to the by-product, slot-type coke ovens are changed.

Any order, decision or other action taken by the Department upon such application may be appealed to the Environmental Hearing Board and the courts of the Commonwealth as provided by law."

tional questions, which were overruled by the Commonwealth Court.

## II.

A.   DER's petition to enforce the order was brought pursuant to section 10(a) of the Air Pollution Control Act.[4]   This section authorizes petitions to enforce a DER order "from which no timely appeal has been taken or which has been sustained on appeal." [5]   Since the order DER seeks to enforce was reached by consent of the parties it is an order "from which no timely appeal has been taken" and therefore is enforceable in the Commonwealth Court.

Bethlehem insists that the order cannot be enforced in the Commonwealth Court pending the outcome of its appeal of DER's denial of its application to modify the order.   But it is the DER decision not to modify the order, rather than the order itself, which Bethlehem has appealed to the EHB.   The original air pollution abatement order remains in effect, and is still an order from which no timely appeal has been taken.   Therefore, DER can still bring an action to enforce the original order pursuant to section 10(a) of the Air Pollution Control Act.

B.   Looking only at the language of section 10(a), it might be argued that an appeal from a decision denying

4.   35 P.S. § 4010(a) (Supp.1976).

5.   Section 10(a) provides:
     "The Attorney General, at the request of the department, may initiate, by petition, in the Commonwealth Court or the court of common pleas of the county in which the defendant resides or has its place of business, an action for the enforcement of any order issued pursuant to this act by the department from which no timely appeal has been taken or which has been sustained on appeal.   The court, in such proceeding, shall have the power to grant such temporary relief as it deems just and proper and if, after hearing, the court finds that such order has not been fully complied with, the court shall enforce such order by requiring immediate and full compliance therewith. The Commonwealth shall not be required to furnish bond or other security in any proceeding instituted under this subsection."

modification of an order is an appeal from the order it-self, so as to deprive the Commonwealth Court of juris-diction. Such an interpretation, however, would be total-ly inconsistent with the purpose of section 10(a).[6]

Section 10(a) of the Air Pollution Control Act must be construed in accordance with the purposes of the Act.[7] The Act's purposes include the "protection of pub-lic health, safety and well-being of [the] citizens . . . ."[8] This declaration of policy, adopted in 1968, replaced an earlier declaration that air resources be maintained within the limits of technological feasibility and economic reasonableness.[9] This change

". . . disclos[es] a marked shift from combating air pollution within limitations of technical feasibility and economic reasonableness to protection not only of the air resource itself, but also of the public health, property and recreational resources of the Common-wealth."

*Rushton Mining Co. v. Commonwealth*, 16 Pa.Cmwlth. 135, 140, 328 A.2d 185, 188 (1974).

We conclude that the adoption of the Air Pollu-tion Control Act makes the preservation of the quality of our air resources a matter of the highest public importance.[10]

---

6. The purpose of all statutory interpretation is to give effect to the intent of the Legislature. Where the words of a statute are not free from ambiguity they are interpreted in light of the over-all purpose of the statute. Act of November 25, 1970, P.L. 1339, § 3, 1 Pa.C.S.A. § 1921 (Supp.1976); see *Commonwealth v. Monu-mental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974).

7. 35 P.S. §§ 4001 et seq. (Supp.1976).

8. 35 P.S. § 4002 (Supp.1976).

9. Act of June 12, 1968, P.L. 163, No. 92, § 1, amending Act of January 8, 1960, P.L. (1959) 2119, § 2, 35 P.S. § 4002 (Supp.1976).

10. This policy also stems from the Pennsylvania *Constitution*: "The people have a right to clean air . . . ." Pa.Const. art. I, § 27 (Supp.1976).

In keeping with this policy, the Legislature adopted procedures to facilitate enforceability of the Act. A variety of means of enforcement are provided, including the enforcement of administrative orders, direct proceedings in court for injunctive relief or civil penalties, and actions brought by district attorneys or members of the general public.[11] Emergency enforcement powers are also granted.[12] Moreover, the Legislature restricted the availability of supersedeas during administrative appeals from DER orders.[13]

C. Section 10(a) of the Air Pollution Control Act should also be interpreted in light of the statutory scheme created by the United States Congress in the Clean Air Act Amendments of 1970.[14] These amendments require the Environmental Protection Agency (EPA) to set national air quality standards.[15] The states are then required to submit plans for the implementation of these standards. These plans must be approved by the EPA if they meet eight general criteria set out in the statute. The principal criterion for federal approval is that the state plan ensure that primary air quality standards set by the EPA to protect the public health will be satisfied within

11. 35 P.S. §§ 4008–10 (Supp.1976).

12. Id. § 4006.2 (Supp.1976).

13. Act of December 3, 1970, P.L. 834, § 20(d), 71 P.S. § 510–21(d) (Supp.1976), provides:

> "An appeal taken to the Environmental Hearing Board from a decision of the Department of Environmental Resources shall not act as a supersedeas, but, upon cause shown and where the circumstances require it, the department and/or the board shall have power to grant a supersedeas."

This section, by limiting the availability of supersedeas, reflects a policy in favor of the enforceability of DER orders. Yet this section applies only to orders which are not yet final. Although such orders are enforceable, see 35 P.S. §§ 4008–09, they are not subject to the provisions of section 10(a) of the Air Pollution Control Act. Clearly, an even stronger policy in favor of enforceability applies once an order becomes final.

14. 42 U.S.C.A. §§ 1857 et seq. (Supp.1976).

15. 42 U.S.C.A. § 1857c–4 (Supp.1976).

three years.[16]   In summary, the Clean Air Act Amendments of 1970 create a legislative scheme by which:

> "Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State  .  .  .."[17]

Pennsylvania's Air Pollution Control Act provides the mechanism by which the State meets its responsibilities under the Clean Air Act Amendments of 1970.  Section 10(a) of the Air Pollution Control Act, provides a means for enforcing the State Implementation Plan.  Thus, section 10(a) of the Act, supra, should be interpreted in accordance with the policies underlying the Clean Air Act Amendments of 1970.

Like the Pennsylvania Air Pollution Control Act, the Clean Air Act Amendments of 1970 reflect a legislative determination that air pollution constitutes a serious threat to public health and safety, and that maintaining clean air is a matter of the highest priority:

> "[T]he 1970 Amendments to the Clean Air Act were a drastic remedy to what was perceived as a serious and otherwise uncheckable problem of air pollution."

*Union Electric Co. v. EPA*, 427 U.S. 246, 256, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474 (1976).  The importance of achieving air quality standards is reflected by the expedited timetable set for EPA and state compliance[18] and

---

**16.**  42 U.S.C.A. § 1857c–5 (Supp.1976).  The Pennsylvania State Implementation Plan was approved in July, 1972.  See 40 C.F.R. §§ 52.2020 et seq.

**17.**  42 U.S.C.A. § 1857c–2(a) (Supp.1976).

**18.**  EPA was required to set air quality standards within 90 days. 42 U.S.C.A. § 1857c–4 (Supp.1976).  State plans for implementation of these standards were to be submitted within nine months after the air quality standards were set, and approved by the EPA within four months after submission.  42 U.S.C.A. § 1857c–5 (Supp.1976).  Among the requirements for State implementation

by Congress' determination that achieving air quality standards should take priority over economic and technical considerations. As the Supreme Court recently explained:

"Section 110(a)(2)(A)'s three-year deadline for achieving primary air quality standards is central to the Amendments' regulatory scheme and, as both the language and the legislative history of the requirement make clear, it leaves no room for claims of technological or economic infeasibility."

Id. at 258, 96 S.Ct. at 2526.[19]

Like the Pennsylvania Air Pollution Control Act, the Clean Air Act Amendments of 1970 provide for a variety of enforcement mechanisms. The primary mechanism for enforcement of the Clean Air Act is the enforcement of implementation plans by the states. In addition EPA can issue compliance orders, the violation of which carries severe monetary penalties, and bring actions for injunctive relief.[20] Citizen suits to enforce emission limitations are also encouraged.[21]

█ Thus, the Clean Air Act, like the Pennsylvania Air Pollution Control Act, dictates a policy in favor of the enforceability of air pollution abatement orders. We will not adopt an interpretation of section 10(a) which is not required by its language and which would deprive the courts of jurisdiction to enforce pollution abatement

plans was that they meet primary air quality standard within three years. 42 U.S.C.A. § 1857c–5(a)(2)(A).

19. The Supreme Court's interpretation of the Clean Air Act Amendments of 1970 was based, in part, on a Senate Committee report that determined that public health is more important than questions of technological feasibility:

" 'Therefore, the Committee determined that existing sources of pollutants either should meet the standard of the law or be closed down . . . . ' S.Rep.No.1196, 91st Cong., 2d Sess., 2–3 (1970)."

427 U.S. at 259, 96 S.Ct. at 2526.

20. 42 U.S.C.A. § 1857c–8 (Supp.1976).

21. 42 U.S.C.A. § 1857h–2 (Supp.1976).

orders.[22]   The health and safety of the public must take priority.

D.   We conclude, therefore, that the policies behind both state and federal law compel the interpretation of section 10(a) of the Pennsylvania Air Pollution Control Act suggested by a literal reading of its terms.   The consent order in this Court is one "from which no timely appeal has been taken," and therefore an enforcement action may be brought in the Commonwealth Court pursuant to section 10(a).   Section 10(a) provides no exception for cases where a party is seeking modification of an order and the policies expressed in both state and federal law prevent us from writing any such exception into the statute.

Bethlehem may ultimately prevail in its efforts to have the order modified, and thus could be subject to unnecessary expense if the present order is enforced.   This possibility, however, would not justify the conclusion that the courts are without jurisdiction to enforce the order. Such a conclusion would leave the courts powerless to enforce the order—even where it is highly unlikely that the order will be modified and where continued pollution in violation of the order presents a serious danger to the

**22.** In *Train v. Natural Resources Defense Counsel, Inc.*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), the Georgia State Implementation Plan was challenged because it included a variance procedure.   It was argued that the variance procedure would invite litigation and thereby delay achievement of air quality standards.   While the Court recognized that the procedure would invite variance applications, and that polluters would seek judicial review if their applications were denied, the Court noted:
> "This litigation, however, is carried out on the polluter's time, not the public's, for during its pendency the original regulations remain in effect, and the polluter's failure to comply may subject him to a variety of enforcement of procedures."

Id, at 92, 95 S.Ct. at 1488.
   Similarly, we believe that DER orders must remain enforceable during the pendency of modification proceedings in order to comply with the spirit of the Clean Air Act Amendments of 1970. We should not adopt a system by which litigation could be used as a tool to delay enforcement of air quality standards.

public.[23] In effect, the mere application for an extension would operate as a stay; an applicant could continue to pollute for the period required to appeal to the EHB and the courts. Such a result would be totally at odds with the strong legislative policy expressed in both the Air Pollution Control Act and the Clean Air Act. The modification proceedings must be carried out on the polluter's time, not at the expense of the general public.[24]

## III.

A. In addition to its argument that section 10(a) does not apply when modification proceedings are pending, Bethlehem contends that the doctrine of election of remedies foreclose DER from invoking the jurisdiction of the Commonwealth Court. Bethlehem does not raise an election of remedies argument in the strict sense.[25] Rather, Bethlehem appears to be arguing that the order, by its terms, precludes enforcement pending the outcome of modification proceedings.[26] Bethlehem contends that by agreeing to that portion of the consent order which allows it to apply for modification, DER

23. Where, as here, DER has reviewed and rejected the application, it cannot be assumed that the applicant will prevail on appeal.

24. See note 22, supra.

25. In *Department of Environmental Resources v. Leechburg Mining Co.*, 9 Pa.Cmwlth.Ct. 297, 305 A.2d 764 (1973), DER brought a claim based on a consent order along with separate claims based on the underlying violations which led the DER to seek the original order. The court limited DER to enforcement of the consent order. Assuming that the Commonwealth Court's decision can be squared with the provision in the Air Control Act that "the existence of or exercise of any remedy shall not prevent the department from exercising any other remedy . . . ." 35 P.S. § 4010(e) (Supp.1976), it does not bar this action. DER here only seeks to enforce the consent order; separate claims are not involved. See *Department of Environmental Resources v. Leechburg Mining Co.*, supra.

26. We have some doubt whether this argument raises a question of jurisdiction. Since it might have some bearing on our interpretation of section 10(a), however, we will consider Bethlehem's argument. See note 2, supra.

agreed not to enforce the order until its decision on modification has been upheld on appeal.

██ We do not interpret the consent order to foreclose enforcement pending the outcome of modification proceedings. Paragraph 9 of the order only provides that the order "may be modified" by the DER, and preserves the right to appeal from its decision. It does not provide that enforcement will be stayed pending any appeals from the DER's decision. It is apparent that the purpose of this paragraph is to ensure that DER will consider Bethlehem's application, and to allow Bethlehem to appeal DER's decision. The paragraph was included to escape the general rule that an administrative agency's denial of a motion to reopen is not subject to judicial review, see *SEC v. Louisiana Public Service Commission*, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897 (1957); *Martin Marietta Corp. v. FTC*, 376 F.2d 430 (7th Cir. 1967), not as a limitation on the DER's enforcement power. This Court is most hesitant to construe any agreement as a limitation on the DER's enforcement powers, and, in the absence of clear and specific language to the contrary, will not do so here.[27]

██ B. Finally, Bethlehem contends the doctrine of primary jurisdiction prevents DER from maintaining this action.[28] Primary jurisdiction is a flexible

27. *Winn-Dixie Stores, Inc. v. FTC*, 377 F.Supp. 773 (M.D.Fla.1974), is in no way inconsistent with our decision. That action was brought by Winn-Dixie to compel the FTC to modify its order. The court enjoined enforcement of the order only after it determined that Winn-Dixie was entitled to modification. The court ordered the FTC to reopen its proceedings and modify the order; thus the order could not be enforced because it was no longer valid.

The action in *Winn-Dixie* would be equivalent to a motion by Bethlehem after modification of the consent order by the EHB, to change the Commonwealth Court's enforcement decree in order to reflect the modification. See note 32 infra. Thus *Winn-Dixie* has no bearing on the enforceability of an order which is still valid.

28. If applicable this doctrine could affect our interpretation of section 10(a). See note 2, supra.

doctrine, designed to coordinate the work of agencies and courts. Davis, § 19.01, supra at 5; L. Jaffe, Judicial Control of Administrative Action 121 (1965).

"The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court."

Davis, supra at 3. The doctrine reflects a principle:

". . . that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created . . . for regulating the subject matter should not be passed over."

*Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). In such cases, the initial determination is left to the administrative agency both because its decision is necessary for the "protection of the integrity of the regulatory scheme." *United States v. Philadelphia National Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736 (1963), and may be of "material aid" to the courts, *Ricci v. Chicago Mercantile Ex-*

Bethlehem also makes arguments based on the doctrines of ripeness and exhaustion of administrative remedies. Neither doctrine is applicable here.

Under the ripeness doctrine courts will not intervene when administrative action is abstract, hypothetical, or remote. Davis, § 21.01, supra. This is an enforcement action and, unless enforcement is granted. Bethlehem intends to continue operation of its Johnstown and Bethlehem plants in a manner contrary to the terms of the order DER seeks to enforce. Here the administrative action, and the possible harm to Bethlehem, is immediate and concrete.

Similarly, the doctrine of exhaustion of administrative remedies has no bearing here. When this doctrines applies, a party must pursue the administrative remedies he has against an agency before challenging its action in court. L. Jaffe, Judicial Control of Administrative Action 424 (1965). Here it is an administrative agency which is invoking the jurisdiction of the court, not a party seeking review of administrative action.

*change,* 409 U.S. 289, 305, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973).

The doctrine of primary jurisdiction has no application here. DER, the agency with primary responsibility for enforcing the Air Pollution Control Act, is not being bypassed. Indeed, DER is the party bringing the action. Having obtained a consent order, DER has decided that enforcement is necessary. Under section 10(a) of the Act, the court's duty is to determine whether there has been compliance with the order. This duty is well within the conventional experience of judges, and enhances, rather than interferes with, the integrity of the regulatory scheme.[29]

Bethlehem insists that the doctrine of primary jurisdiction prevents the Commonwealth Court from proceeding until the EHB has acted on its application for modification. The consent order remains valid, however, and failure to comply is unlawful.[30] Even if the proceedings before the EHB involved a timely appeal from the consent order itself, rather than an appeal from an application for modification, Bethlehem would be expected to comply with the order.[31]

This is an enforcement proceeding, based on the original consent order, not a proceeding to determine Bethlehem's right to modification. Thus, the Commonwealth Court is not being called upon to make a decision which should be decided initially by an administrative agency. Nor will enforcement decree impair the integrity of the regulatory process. A judicial determination that Beth-

29. Provisions which enable DER to obtain injunctive relief and civil penalties without first obtaining an administrative order, and which allow suits by district attorneys and members of the general public, make clear the inapplicability of the doctrine of primary jurisdiction. See, 35 P.S. §§ 4010(b), 4010(d), 4010(f) (Supp.1976).

30. 35 P.S. § 4008 (Supp.1976).

31. See note 13, supra.

lehem presently is not in compliance with the consent order in no way interferes with the power of the EHB or the courts to modify the order at some future date.[32] There is no reason to stay judicial enforcement pending the decision of the EHB.

In summary, the doctrine of primary jurisdiction, and the policies underlying it, do not justify a conclusion that section 10(a) of the Air Pollution Control Act is inapplicable during the pendency of modification proceedings.

Based on the clear language of section 10(a) of the Air Pollution Control Act, and the strong legislative policy in favor of effective enforcement of air pollution control standards, we hold that the Commonwealth Court has jurisdiction over this action.

Order affirmed.

MANDERINO, J., concurs in result.

NIX, J., did not participate in the consideration or decision of this case.

---

**32.** The Commonwealth Court believed that a possible conflict could arise if it directed enforcement in accord with the original terms of the order and the order was subsequently modified by the EHB. The court suggested that modification of the original order could serve as a defense in any contempt proceeding. 23 Pa.Cmwlth. at 390, n. 4, 352 A.2d 565 n. 4. No such conflict need arise, however, as the Commonwealth Court can frame its enforcement decree so as to take into account the possibility that the consent order may be modified. Assuming the court fails to do so, the better course would be to seek modification of its decree, rather than risk a contempt citation. See *Mayer & Sons v. Department of Environmental Resources* 18 Pa.Cmwlth. 85, 334 A.2d 313 (1975) (grounds which might require modification of enforcement decree no defense to contempt proceeding).