435 A.2d 1295

**E.L.G. ENTERPRISES CORP. and all Others Similarly Situated Within the Commonwealth of Pennsylvania,**

v.

**GULF OIL COMPANY.**

**Appeal of E.L.G. ENTERPRISES CORP.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Oct. 16, 1981.

(1981) (summary violations warrant prompt disposition, and the rules of criminal procedure are geared toward that goal).

Neil E. Jokelson, Philadelphia, for appellant.

Carole Dotson, Bala Cynwyd, for appellee.

Before CERCONE, President Judge and WICKERSHAM and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is a dispute between E. L. G. ENTERPRISES CORP., appellant herein, which operates an automobile service station at which it sells Gulf gasoline, and GULF OIL CORPORATION, appellee, from whom the appellant buys its gasoline. Appellant sues for itself and all other retail gasoline dealers in Pennsylvania who sell Gulf gasoline.

Appellant seeks injunctive relief and damages based upon allegations that the appellee delivers to its retailers gasoline which is not temperature corrected to 60° F., and that appellee refuses to adjust its billings to reflect the shrinkage of gasoline sold to it at higher temperatures. Appellant contends that such practice of selling "hot gasoline" constitutes a violation of the Weights and Measures Act of 1965, 73 P. S. § 1651 et seq., and Regulations issued under it (70 Pa. Code § 21.1 et seq.); and specifically § 23.13(a)(2) of the Regulations, the relevant portion of which reads:

"(a) The declaration of the quantity of a particular commodity shall be expressed in terms of liquid measure if the commodity is liquid, . . ."

(2) if in units of liquid measure, it shall be in terms of the United States gallon of 231 cubic inches of liquid quart, liquid pint, or fluid ounce subdivisions of the gallon, and shall express the volume of 68°F. (20°C), except in the case of petroleum products for which the declaration shall express the volume of 60°F. (15.6°C) . . .'

The appellee has filed Preliminary Objections to the appellant's Complaint asserting that primary jurisdiction over the subject matter lies with the Attorney General under authority vested in him by the Weights and Measures Act. The lower Court dismissed the Complaint for want of jurisdiction and appellant has appealed the Order. We reverse.

The lower Court has based its order of dismissal on the reasoning that primary jurisdiction is vested in the Attorney General by the Weights and Measures Act of 1965 and that the lower Court cannot act upon the Complaint until complaint has been made to the Attorney General (73 P. S. § 1661) and he has had a chance to determine whether the practice complained of constitutes a violation of the statute or regulations issued thereunder. The rationale of the ruling is said to lie in the advisability of securing the expert judgment of the Attorney General and the Bureau of Weights and Standard Measures which he controls on any technical questions that may be involved in the issue raised by the Complaint.

█ The practice of deferring judicial action until an administrative agency has passed upon such aspects of a litigation as may lie within its competence is widely known as the doctrine of primary jurisdiction. It is a doctrine developed and widely used in our Federal Courts as a means of reconciling the functions of administrative agencies with the judicial functions of a Court. It has been particularly useful with those agencies that have broad administrative and quasi judicial authority, such as the Interstate Commerce Commission exercises over rates and the adjudication of charges of rate discrimination. This reconciliation between administrative agencies and the Courts is accom-

plished under this doctrine by staying judicial action until the agency has passed on those issues that are within its competence and collateral to issues before the Court. The historical development of this doctrine is annotated and reviewed at length in *Mississippi Power and Light Company v. United Gas Pipe Line Company*, 532 F.2d 412, 417–19 (5th Cir. 1976). In that case a public utility was suing a gas pipe line company for damages because of a short-fall in deliveries of gas, while the same utility and others were involved in proceedings before the Federal Power Commission to determine proper priorities in delivery and other relief.

The doctrine of primary jurisdiction is to be distinguished from judicial dismissal or an action for failure to exhaust administrative remedies. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone, while the doctrine of primary jurisdiction is a discretionary concept under which a Court stays judicial action until the administrative body has expressed its views upon such collateral issues as are within its competence: *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956).

In the exposition of the development of the doctrine in *Mississippi Power and Light Co.*, supra, the Court concluded that the present state of the law is that a Court has discretion to seek the input of an administrative agency where the action or ruling of the Agency on issues collateral to the reserved judicial issues will be of assistance to the Court in making its ultimate decision. The advisability of staying judicial proceedings until the Agency has acted is greatest when the issue is already before the Agency. No fixed formula exists for applying the doctrine. A Court must always balance the benefits of seeking an agency's aid with the need to resolve disputes fairly and expeditiously. However, Courts have cautioned that the doctrine should be applied with reluctance because of the added expense and delay to the litigants: 532 F.2d 412, at pp. 418–19.

Almost without exception, cases decided under the doctrine of primary jurisdiction and reviewed in *Mississippi*

*Power and Light Co.*, supra, while staying judicial action on the Complaint have retained jurisdiction rather than dismissing the action as was done by the Court below. Two compelling reasons, one philosophical and the other practical, favor postponement rather than dismissal. Philosophically, the concept of the doctrine of primary jurisdiction is that while judicial jurisdiction exists, its exercise would be aided if the administrative agency acted first. Practically, if the judicial Complaint is dismissed and the Complainant required to start a new proceeding after the administrative agency has acted, the Statute of Limitations may have intervened. In the case at hand, appellant claims injury from July, 1973, already two years beyond the statute.

The issue before us is whether the involvement of the Attorney General and the Bureau of Weights and Standard Measures would shed enough light on the technical aspects of this case to justify the delay and expense involved in staying judicial action while appellant pursues a Complaint to the Attorney General. No action of any sort is now pending before the Attorney General or the Bureau of Weights and Standard Measures on any aspect of the litigation before us.

An examination of the Weights and Measures Act of 1965 shows that it establishes a Bureau of Weights and Standard Measures under the direction of the Attorney General, with the objective of establishing a system of weights and measures in this Commonwealth which will "assure that the amount of a commodity is determined in accordance with good commercial practice": 73 P. S. § 1671. The statute accepts as correct the system of weights and measures in customary use in the United States; and it adopts the definition of basic units of weight and measure equivalents as published by the National Bureau of Standards: 73 P. S. § 1653. The statute enacts guidelines for the determination of correct weights and measures for specific commodities, 73 P. S. §§ 1678–82, and is specifically applicable to commodities in liquid form: 73 P. S. § 1671(a). A regulation has been issued covering the measurement of petroleum products in liquid form: 70 Pa.Code 23.13(a)(2), supra.

The administration and enforcement of the Act is placed in the hands of the Attorney General, aided by a Bureau of Weights and Measures whose director, inspectors and technical and clerical personnel are appointed by him: 73 P. S. § 1656. The powers and duties of the Attorney General are delegated to a large extent to the director and inspectors of the Bureau when acting under the instructions of the Attorney General or at his direction: 73 P. S. § 1666. The Attorney General is vested with the authority to issue regulations for the administration and enforcement of the Act which have the force of law: 73 P. S. § 1658. He has broad powers to investigate complaints made to him concerning violations of the Act, as well as the authority to act on his own initiative to develop information on prevailing procedures used to determine commerce quantities: 73 P. S. § 1661.

If the Attorney General decides the statute has been violated, he has two remedies and two only: (1) he can sue for a civil injunction in any Court of competent jurisdiction: 73 P. S. § 1687 or (2) he can sue to impose criminal penalties: 73 P. S. § 1686. In short, his statutory mandate is to protect the public interest.

■ The Attorney General can pass no judgment on the merits of the private claim. While he can receive complaints from private individuals, all he can do with them is to bring a court action for criminal penalties or a civil injunction. The lower Court acknowledged this by the statement in its Opinion "that the remedies provided by the statute would not redress the injuries alleged by plaintiff".

■ While the filing of a Complaint with the Attorney General might establish that he believed that the sale of "hot gasoline", unadjusted in its measurement to a temperature of 60°F., was a violation of the Bureau's Regulation § 23.13(a)(2), the director of the Bureau has already advised the appellant by letter that he considers that regulation to be controlling. He or the Attorney General could repeat the same advice officially in response to a complaint, but neither the Attorney General nor the Bureau has the authority to determine the extent of the appellant's damage or to award

any measure of relief. They can do no more than has already been done.

We find no justification for staying further proceedings in this case until the appellant has been given an opportunity to file a Complaint with the Attorney General, and the Attorney General has been given a chance to determine whether he should bring a civil or criminal action on behalf of the Commonwealth.

■ The appellee makes the further argument that the Complaint was correctly dismissed because regulations issued by the Federal Department of Energy would have prevented appellee from altering any of its normal business practices which would have an effect on pricing, citing 10 C.F.R. §§ 210.62 and 211.101. However, these regulations were rescinded on March 31, 1981, 46 Fed.Reg. pp. 20512 and 20519 as part of the deregulation of the pricing of petroleum products, so there is no longer any basis for the contention that the Department of Energy should exercise a primary jurisdiction. Whether these regulations would constitute a defense to appellant's claim for damages incurred during the period that they were in effect can be determined when the case is heard on its merits.

Reversed, with directions to dismiss the Preliminary Objections and reinstate the Complaint.