Nancy A. WHITE, on behalf of herself and all others similarly situated, Appellant

v.

CONESTOGA TITLE INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Submitted March 9, 2009.
Filed Oct. 2, 2009.
Reargument Denied Nov. 23, 2009.

David A. Searles, Philadelphia, for appellant.

Darryl J. May, Philadelphia, for appellee.

Arthur F. McNulty and W. Christopher C. Doane, Harrisburg, for Commonwealth–Insurance, Amicus Curiae.

BEFORE: STEVENS, PANELLA, and FREEDBERG, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Nancy White, appeals from the order entered on April 21, 2008 by the Honorable Jane Cutler Greenspan, Court of Common Pleas of Philadelphia County, which dismissed the complaint with prejudice for failure to exhaust statutory remedies and denied the motion to certify class as moot. After careful review, we reverse.

¶ 2 In this appeal, we consider whether White was required to exhaust the statutory remedies set forth in the Pennsylvania Title Insurance Companies Act, 40 PA.STAT. § 910–1 et seq. ("TICA"), prior to instituting a private cause of action with respect to her claim that she was entitled to a discounted title insurance premium. Secondarily, we also address whether the doctrine of primary jurisdiction applies to White's cause of action, thus divesting the trial court from subject matter jurisdiction over such claims.

¶ 3 On December 12, 2006, White filed a class action in the Court of Common Pleas of Philadelphia County arising from her purchase of title insurance from Appellee, Conestoga Title Insurance Company ("Conestoga"), during the refinancing of her home in 2005. In her complaint, White alleged that Conestoga, through its title insurance agents, systematically failed to give discounted insurance rates as mandated by the approved rate structure. Consequently, White sought relief based on the following theories: 1) money had and received, a common law action; 2) unjust enrichment, accounting, disgorgement, restitution, additional common law theories of recoveries; and 3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection law ("UTPCPL"), 73 PA.STAT. § 201–1 et seq.[1]

¶ 4 By way of background, we note that Conestoga provided for three rate premiums in its insurance Manual, *see* Insurance Manual of Rates, Policies, and Endorsements ("Manual") in Plaintiff's Motion for Class Certification, Exhibit I, filed 11/5/2007, setting forth the specific rates, policies, and endorsements applying to its coverage: (1) the basic rate, a default rate that is applied if either of the other two rates do not apply; (2) the reissue rate (90% of the basic rate); and (3) the refinance rate (80% of the reissue, or 72% of the basic).

¶ 5 Our review of the Manual indicates that the refinance rate must be charged when two elements are satisfied: (1) refinancing of the property is sought within three years of the prior policy; and (2) there has been no change in fee simple ownership. *See* Manual, § 5.7. Section 5.7 of the Manual, concerning the refinance rate, includes no language that requires the insured to produce the prior policy in order to qualify for the discount although Section 5.3 of the Manual, governing the reissue rate, does include this requirement. Of particular significance is the fact that the Manual does not contain any procedure for grievances concerning the insurance rates.

¶ 6 On October 1, 2007, White filed a motion for class certification. In opposition, Conestoga challenged the trial court's subject matter jurisdiction on grounds that White was required to exhaust the statutory remedies set forth under the TICA, 40 PA.STAT. § 910–44(b), prior to instituting a private cause of action. On March 3, 2008, the trial court held a class certification hearing to consider the parties' positions, particularly the issue of exhaustion.

¶ 7 During the hearing, White asserted that she was offered the basic rate at the closing of her refinancing, rather than the discounted refinance rate which she alleg-

---

1. We note that all title insurers in Pennsylvania are governed by the TICA, which regulates the process by which title insurers apply to the Insurance Department ("Department") for approval of the rates for their policies. Title insurers may either file their own proposed rates with the Pennsylvania Insurance Commissioner ("Commissioner") or become a member of a rating organization that files proposed rates on behalf of all its members. Conestoga files its own rates with the Commissioner and the approved rates constitute Conestoga's Manual. *See* Manual.

es she was entitled to receive under the terms of Conestoga's Manual. White established during the proceedings that Conestoga's agent, ACBS Settlement Company, conducted the title search of White's property and should have easily discovered that White qualified for the refinance rate. Although Conestoga admitted to this allegation, its position was that it was not compelled to charge the discounted rate unless the insured produced a copy of the prior policy at closing, which White failed to do. White alleged she was under no requirement to produce a copy of her policy and that the imposition of the basic rate amounted to an overcharge of $101.65.[2] In support of her allegations, White presented evidence to demonstrate that Conestoga consistently failed to provide the fixed, discounted title insurance rates to consumers, but rather imposed, without discretion, the highest approved rate.

¶ 8 Following the hearing and receipt of the parties' briefs, Judge Greenspan entered an order on April 21, 2008, dismissing White's complaint with prejudice for failure to exhaust the statutory remedy provided under TICA. The motion for class certification was subsequently denied as moot. This timely appeal followed.[3]

 ¶ 9 Preliminarily, we must address Conestoga's application to strike a reply brief of *amicus curiae,* Joel S. Ario, Pennsylvania Insurance Commissioner, which was deferred to this time by a *per curium* order. In its application, Conestoga argues that the Commissioner's reply brief as *amicus curiae* violates the Pennsylvania Rules of Appellate Procedure, specifically,

Pa.R.A.P., Rule 531, 42 Pa.Cons.Stat.Ann, and that the language of this rule allows for only one *amicus* brief. We do not agree.

¶ 10 Initially, we note that although Rule 531 governs the participation of *amicus curiae,* it does not reference the submission of reply briefs by an individual or entity not a party to the proceeding. The rule provides in pertinent part: "Anyone interested in the questions involved in any matter pending in an appellate court ... although not a party, may, without applying for leave to do so, *file a brief amicus curiae* in regard to those questions." Rule 531 (emphasis added). Thus, the language of Rule 531 merely permits *amicus curiae* to file a single brief without leave from the court, it does not specifically foreclose *amicus curiae* from submitting a reply brief altogether.

¶ 11 Nonetheless, we conclude that the Commissioner's reply brief must be stricken based on the strict application of Rule 2113(c) of the Pennsylvania Rules of Appellate Procedure, which states that only appellants may file a reply brief as a matter of right and provides that further briefs may be filed only with leave from the Court. *See* Pa.R.A.P., Rule 2113, 42 Pa.Cons.Stat.Ann. As the Commissioner neither sought nor received leave from this Court in accordance with Rule 2113(c) prior to submitting his reply brief, we must therefore grant Conestoga's application to strike the reply brief of *amicus curiae.*[4] *See also Lausch v. Unemployment Compensation Board of Review,* 679 A.2d 1385,

---

2. Section 5.7 of the Manual, concerning the refinance rate, includes no language that requires the insured to produce the prior policy in order to qualify for the discount.

3. White's brief was filed jointly with the plaintiff in *Uyehara v. Guarantee Title,* which was consolidated with this appeal. On December

10, 2008, the Court deconsolidated the appeal and dismissed *Uyehara* due to the liquidation of Guarantee Title. Thus, we review only White's appeal.

4. This has no effect on the Commissioner's properly submitted *amicus* brief.

1390 (Pa.Cmwlth.1996), *appeal denied*, 547 Pa. 745, 690 A.2d 1164 (1997) (holding that a party must seek leave *prior to filing reply brief* that is not a matter of right).

¶ 12 We now turn to the primary matter before this Court. On appeal, White raises the following issues for our consideration:

1. Whether Appellant consumers seeking to enforce their right to a discounted rate for title insurance approved by the Insurance Commissioner must exhaust an unarticulated administrative remedy to obtain the premium discount they are entitled to receive by the plain terms of the Appellee title insurer's approved rate manual?

2. Whether the Insurance Commissioner has primary jurisdiction to entertain a consumer's claim for refund of an overcharge of title insurance premium, when Appellee title insurer charged rates for title insurance in excess of the mandatory rates set forth in the Appellee's approved rate manual, such that the courts of Pennsylvania must abstain from exercising their jurisdiction to entertain the consumer's judicial claim for reimbursement?

Appellant's Brief, at 4.

¶ 13 In essence, White first contends that the trial court erred when it concluded that she was required to exhaust the statutory remedy set forth in the TICA prior to instituting a private cause of action with respect to her claim that she was entitled to a discounted title insurance premium in connection with the refinancing of her home. Prior to resolving this issue, we turn first to the relevant law.[5]

¶ 14 The issue of whether or not the TICA provides an exclusive administrative remedy is a question of statutory interpretation. Statutory interpretation presents a question of law and, as such, our standard of review is *de novo*, while our scope of review is plenary. *See Schappell v. Motorists Mutual Ins. Co.*, 594 Pa. 94, 99, 934 A.2d 1184, 1187 (2007). Additionally, issues concerning the jurisdiction of the trial court also present questions of law and are subject to *de novo* review. *See Mazur v. Trinity Area School Dist.*, 599 Pa. 232, 240, 961 A.2d 96, 101 (2008).

¶ 15 The exhaustion of administrative remedies is a long recognized legal doctrine, arising in part out of the Statutory Construction Act, 1 PA.CONS.STAT.ANN. § 1504, which provides:

In all cases where a remedy is provided or a duty is enjoined or anything to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 PA.CONS.STAT.ANN. § 1504.

¶ 16 The concept behind the exhaustion doctrine is that courts must refrain from interfering in the "pervasive regulatory scheme" the Legislature has committed to the supervision of an administrative agency. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 6, 383 A.2d 791, 793 (1977). However, this doctrine is "nei-

---

5. In its brief, Conestoga claims that White has blurred the doctrines of exhaustion of administrative remedies and primary jurisdiction. Conestoga is incorrect; the confusion arises out of the opinion below. Here, we find that White was forced to respond to the reasoning of the trial court by arguing that neither doctrine was appropriate and that the court below had jurisdiction over the claim. Consequently, as it is unclear if both doctrines were relied upon by the trial court in the underlying opinion, each will be discussed separately. *See* Opinion, 4/21/08, at 4–5.

ther inflexible nor absolute." *Id.,* at 6, 383 A.2d 791. The administrative remedy must only be exhausted where the Legislature provides an exclusive and specific method for resolution of a claim, and where the statutory remedy is adequate. *See Terminato v. Pennsylvania Nat. Ins. Co.,* 538 Pa. 60, 70, 645 A.2d 1287, 1292 (1994). The Statutory Construction Act does not aid the court in determining whether an administrative remedy is exclusive, but merely provides that if it is, then no common law form of action may be pursued. *See School Dist. of Borough of West Homestead v. Allegheny County Bd. of School Directors,* 440 Pa. 113, 118–19, 269 A.2d 904, 907 (1970) (interpreting the nearly identical predecessor to § 1504). Also, "[t]he mere existence of a remedy does not dispose of the question of its adequacy." *Feingold,* 477 Pa. at 7, 383 A.2d at 794. *See also Citizens' Ambulance Service, Inc. v. Gateway Health Plan,* 806 A.2d 443, 447 (Pa.Super.2002), *appeal denied,* 572 Pa. 763, 819 A.2d 546 (2003) ("It is well-settled ... that the exhaustion requirement applies only where adequate administrative remedies exist and are available)."

▮ ¶ 17 When determining whether a statute provides an exclusive administrative remedy, this Court must focus on the question of intent. "In essence, the key to our analysis is the *clear legislative intent* to confine the role of the judiciary to one of review of an administrative process." *Jackson v. Centennial School Dist.,* 509 Pa. 101, 104, 501 A.2d 218, 219 (1985) (emphasis added).

▮ ¶ 18 Accordingly, the first step in our analysis is to determine whether the TICA provides an exclusive, specific, and constitutionally adequate disposition and remedy for White's contentions that must be exhausted prior to instituting a private cause of action.[6]

¶ 19 Section 910–44(b) of the TICA provides, in pertinent part, the following:

(b) Every rating organization and every title insurance company which makes its own rates shall provide, within this Commonwealth, reasonable means *whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him.* If the rating organization or title insurance company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or such title insurance company on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action.

40 PA.STAT. § 910–44(b) (emphasis added).

¶ 20 We note that 40 PA.STAT. § 910–48, set forth in pertinent part below, provides that penalties imposed by the Commissioner may be additional to any other penalty imposed at law:

(a) The commissioner may, if he finds that any person or organization has violated any provision of this article, impose a penalty of not more than five

---

**6.** Although White did not argue the adequacy of remedies provided by the TICA in her post-hearing brief, doing so only in her appellate brief before this Court, we need not find waiver of this claim as the issue of adequacy was fully addressed by the trial court in its recent opinion. *See* Opinion, 4/21/08, at 5–7.

hundred dollars ($500) for each such violation, but if he finds such violation to be wilful, he may impose a penalty of not more than five thousand dollars ($5,000) for each such violation. *Such penalties may be in addition to any other penalty provided by law.*

40 PA.STAT. § 910–48(a) (emphasis added).[7]

¶ 21 Here, White alleges that Conestoga engaged in deceptive business practices and pervasively overcharged policy holders, including herself, by imposing the highest approved rate, regardless of consumers' qualification for a discounted rate. White is not merely claiming that Conestoga failed to apply the proper rate, but rather alleges that Conestoga did not apply the rate structure *at all,* and merely imposed the highest rate on unsuspecting consumers without any discretion or deference to the rate structures approved by the Commissioner. Aside from the fact that White's complaint references the rate structure, we find that the TICA is wholly inapplicable to White's claims.

¶ 22 In fact, in recognizing a need to regulate and monitor potential unfair and deceptive practices in the insurance industry, the Legislature enacted a separate statute from the TICA, known as the Unfair Insurance Practices Act, 40 PA.STAT. § 1171.1 et seq. ("UIPA"). *See also* 15 U.S.C.A. § 1011 (declaring that regulation of the insurance industry is in accordance with the intent of Congress). The UIPA allows the Commissioner to investigate acts or practices within the insurance industry that are deemed unfair or deceptive. *See* 40 PA.STAT. § 1171.4. Moreover, within the UIPA, there is a savings clause

that provides that the powers of the Commissioner under the act are additional to any others at law. *See* 40 PA.STAT. § 1171.13.

¶ 23 We note that the TICA absorbed the provisions of the UIPA's predecessor, which were largely reenacted by the UIPA. *See* 40 PA.STAT. § 910–54. Under the TICA, it provides that if a purchaser of title insurance is aggrieved by the application of the company's approved title insurance rates, the insured must first bring a complaint to the company, followed by an appeal to the Commissioner, who may merely "affirm or reverse." 40 PA.STAT. § 910–44(b). This would indicate that if the grievance concerns deceptive business practices, the provisions of the UIPA, absorbed by the TICA, would apply. As few cases have considered the precise issue before us, whether the TICA provisions must first be exhausted prior to bringing a private cause of action for alleged fraudulent insurance practices that fall within the definitional language of the TICA, we turn to those decisions in which our courts have reviewed the issue of exhaustion as applied to the UIPA provisions.

¶ 24 In *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427 (1986), *appeal denied,* 516 Pa. 635, 533 A.2d 93 (1987), this Court held that the UIPA was not an exclusive administrative remedy, even though the alleged actions may fall within its definitional language. This Court ruled that the appellant, when not directly or indirectly claiming a violation of the UIPA, could bring a private action under the UTPCPL[8] for statutorily defined wrongs

---

**7.** We note this specific provision only to highlight the fact that the legislature evidently never intended that the imposition of penalties for violation of insurance practices be limited only to the remedies under the TICA; remedies are clearly available through actions at law. *See* 40 PA.STAT. § 910–48(a) ("Such

penalties may be in addition to any other penalty provided by law.").

**8.** The UTPCPL permits an aggrieved consumer to bring a private action. *See* 73 PA.STAT. § 201–9.2.

because "the limited penalties of the [UIPA] do not represent the sole and exclusive deterrent to alleged unfair or deceptive acts of insurers and their agents." *Id.*, at 434. We find it significant to note that the *Pekular* decision has been followed by subsequent panels of this Court. *See Wright v. North American Life Assurance Company*, 372 Pa.Super. 272, 539 A.2d 434 (1988); *Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987).

¶ 25 In the matter before us, White has not claimed, and need not claim, a violation of the UIPA, but has sought a private action under UTPCPL. We find it incongruous for Conestoga to suggest that the Legislature intended the TICA to control and be the exclusive administrative remedy for claims of unfair and deceptive insurance practices that tangentially relate to insurance rates, when it clearly did not intend the UIPA, a more pertinent statute absorbed by the TICA, to be an exclusive administrative remedy over such claims. We note that if the UIPA does not provide a proper remedy for a claim such as White's, which it was designed to address, it is unclear how the TICA could provide such a remedy.

■ ¶ 26 Nonetheless, we acknowledge that the claim in *Pekular* did not involve an overcharge of title insurance rates and there was no implication of the TICA. To address this, the trial court maintained in its opinion that when there is an irreconcilable conflict between two statutory provisions, the "special provisions" of the TICA prevails and is "construed as an exception to the general provision" of UTPCPL. *See* Order and Opinion, 4/21/2008, at 9 (quoting 1 PA.CONS.STAT.ANN. § 1933). We agree that when the two statutes are in irreconcilable conflict, effect should be given to both if possible. *See* 1 PA.CONS.STAT. ANN. § 1933. However, we conclude that the TICA and the UTPCPL are not in irreconcilable conflict and the mere fact that the alleged pattern of overcharges involves the approved insurance rates does not afford deference to, nor does it implicate, the TICA. Rather, we view the complaint as implicating the UTPCPL and raising the issue of whether Conestoga engaged in deceptive business practices. *See, e.g., Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 909 A.2d 1211 (2006), *appeal denied*, 596 Pa. 720, 944 A.2d 759 (2008) (holding that claims of violations of the Non–Profit Law were improperly classified as claims that affected insurance rates, unnecessarily implicating the TICA).

■ ¶ 27 Significantly, the Commissioner, as *amicus curiae*, agrees that the TICA does not provide an exclusive remedy that must be exhausted before seeking a private action. An administrative agency's statutory interpretation concerning the subject matter it is charged to oversee is given great weight, but is subject to review by courts and may be disregarded if clearly erroneous. *See Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 634–35, 752 A.2d 878, 881 (2000); *Frey v. State Farm Mut. Auto. Ins. Co.*, 429 Pa.Super. 425, 632 A.2d 930 (1993). Accordingly, the Commissioner's interpretation of the TICA is not erroneous, as the above analysis demonstrates, and his position is given great weight.

¶ 28 In an attempt to sidestep the consumer protection laws truly at issue here, Conestoga relies on the trial court's application of this Court's decision in *Maryland Casualty Co. v. Odyssey Contracting Corp.*, 894 A.2d 750 (Pa.Super.2006), *cert. denied*, 549 U.S. 1305, 127 S.Ct. 1887, 167 L.Ed.2d 365 (2007). In *Maryland Casualty*, the plaintiff insurer brought suit against policy holders for breach of contract due to the failure to pay all the

premiums owed for workers' compensation insurance coverage. *See id.,* at 753. The policy holders counterclaimed, asserting that the plaintiff intentionally and knowingly applied an improper rate classification to inflate the amount of the premiums. *See id.* The trial court entered judgment on the pleadings in favor of the insurance company plaintiff. *See id.*

¶ 29 On appeal in *Maryland Casualty,* this Court sought to answer whether the court of common pleas could exercise subject matter jurisdiction over the defendants' counterclaim or whether the remedy under the workers' compensation statute must be exhausted. *See id.,* at 752. In holding that the policy holder must exhaust the administrative remedy, this Court pointed to legislative intent and based its decision on not only the statutory language, but also "on provisions contained within the Pennsylvania Workers Compensation Manual." *Id.,* at 755. In light of the 471 page manual, replete with thirty-four pages of complicated rate classifications, this Court "agree[d] with the trial court's reasoning and *its reliance on the provisions of Rule XVI [ ] in the Workers Compensation Manual." Id.* (emphasis added).

¶ 30 *Maryland Casualty* is inapposite for a number of reasons. First, the policy holders' counterclaims were completely dissimilar from consumer claims under the UTPCPL, as workers' compensation claims are between an employer and an insurer, two commercial parties. Second,

this Court's decision in *Maryland Casualty* was based, in large part, on a Workers' Compensation Manual submitted by the Pennsylvania Compensation Rating Bureau, replete with thirty-four pages of complicated rate classifications, and which provided evidence of a "pervasive regulatory scheme" intended to be administered by an agency with "expertise and broad regulatory and remedial powers." *Id.,* at 754. That is not the situation before us, as there are only three classifications of insurance rates involved and the Commissioner himself denies that his agency has exclusive jurisdiction over the claim. Third, *Maryland Casualty* must be kept within the context in which it was decided: a contract dispute between two commercial parties, governed by an extensive manual issued by the governmental agency overseeing the industry. Perhaps a straight forward grievance concerning an overpayment due to misapplication of the rate can be solved exclusively in an administrative context, but when the claim involves alleged deceptive insurance company practices that fall under the UTPCPL, it is clear that the legislature did not intend for the TICA to provide an exclusive remedy.[9]

¶ 31 Nonetheless, Conestoga argues, in reliance on *Maryland Casualty,* that the plain language of the TICA compels an aggrieved party to follow the administrative process. We note that the Workers' Compensation statute at issue in *Maryland Casualty* employs language similar to that of the TICA, including the generally passive construction of "may be heard." [10]

9. *But see Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600, 602–03 (1988) (stating that when appellants "indirectly claim[ ] a violation of the [UIPA] by presenting the [UIPA] violation as the foundation for appellant's direct claim" under the UTPCPL, the Commissioner must first determine whether the appellee violated the UIPA). We mention *Gordon* only for the limited purpose of advising the parties that we are aware

of the decision; however, we nonetheless attribute it little weight in the face of the *Pekular* decision and recent decisions in accord with *Pekular.*

10. "Each rating organization and every insurer to which this article applies which makes its own rates shall provide within this Commonwealth reasonable means whereby any person aggrieved by the application of its

77 Pa.Stat. § 1035.17. Specifically, the argument is that the word "may" indicates that the aggrieved party can choose to either exhaust the grievance process or abandon any claim. The decision in *Maryland Casualty* does not discuss the issue, but its holding facially suggests that the use of "may" did not indicate a discretionary process. However, as mentioned above, the holding was based on the grievance procedure outlined in the Manual issued by the Rating Bureau, not merely the statutory language. Therefore, *Maryland Casualty* is inapposite for this proposition as well.

¶ 32 In statutory interpretation, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.Cons.Stat.Ann. § 1903. The word "may" is generally discretionary, as opposed to the word "shall," which indicates that an action is mandatory. This Court is not convinced, absent some other indication of legislative intent, that the use of "may" in the TICA was meant to compel a class of consumers alleging violations of the UTPCPL to either complain to the insurance company first or abandon any grievance.[11]

¶ 33 To underscore the above analysis, we find it persuasive to call attention to the authority arising out of the United States District Court, Eastern District of Pennsylvania, interpreting the TICA under the same facts as before this Court. The Eastern District Court has consistently held that the TICA does not provide an

exclusive administrative remedy for claims similar to White's. *See, e.g., Guizarri v. Ticor Title Ins. Co.*, 2007 WL 756722 (E.D.Pa.2007) (rejecting the defendant's argument that the TICA provides an administrative remedy which is exclusive); *Markocki v. Old Republic Nat. Title Ins. Co.*, 527 F.Supp.2d 413 (E.D.Pa.2007) (holding that the TICA did not require insured to exhaust administrative remedies before pursuing the TICA claim under the UTPCPL); *O'Day v. Ticor Title Ins. Co. of FL*, 2007 WL 756719 (E.D.Pa.2007) (finding that the TICA does not provide an administrative remedy which is exclusive in accord with prior district court decisions); *Cohen v. Chicago Title Ins. Co.*, 2006 WL 1582320 (E.D.Pa.2006) (rejecting Chicago Title Insurance Company's request to dismiss the class action complaint on grounds that the TICA does not provide the exclusive remedy for individuals over-charged for title insurance). Although we acknowledge the recent decision, *Amato v. United General Title Ins. Co.*, 2009 WL 691983 (E.D.Pa.2009), in which the Eastern District Court relied on *Maryland Casualty* to find that the TICA provides an exclusive administrative remedy, we conclude that *Amato* is an aberration in the prevailing law on this issue as demonstrated by the numerous decisions rendered inapposite to *Amato* as referenced above.[12]

¶ 34 Finally, we find the decision rendered by the United States District Court, District for New Jersey in *Charles v. Lawyers Title Insurance Corporation*, 2007

---

rating system may be heard ..." 77 Pa.Stat. § 1035.17 (emphasis added).

**11.** Conestoga's reliance on *D & H Distributing Co., Inc. v. National Union Fire Ins. Co.*, 817 A.2d 1164 (Pa.Super.2003), is misplaced. *D & H* involved interpretation of an arbitration agreement, not a statute reflecting legislative intent.

**12.** The confusion concerning the TICA in this context is apparent, as two cases in the Eastern District of Pennsylvania were stayed pending the decision in this case. *See Abel v. Ticor Title Ins. Co.*, Case No. 2:06–CV–04630–JF (E.D.Pa.2007); *O'Day v. Ticor Title Ins. Co.*, Case No. 2:06–CV–04660–JF (E.D.Pa. 2007).

WL 1959253 (D.N.J. July 3, 2007) to be helpful, though we note it is not controlling precedent on this Court. In that matter, the New Jersey District Court considered consolidated claims of individuals who filed suit for violations of the New Jersey Consumer Fraud Act, fraudulent misrepresentation and unjust enrichment against a title insurer after they were denied a discounted rate of title insurance in connection with the refinancing of their mortgages, similar to White. On appeal by application of the insurer, the District Court held that the appellees were not precluded by the "filed rate doctrine" from bringing their common law claims in court because they were not seeking to change the rates of insurance previously established by the New Jersey Department of Banking and Insurance, the regulatory agency over such rates, but, rather, were requesting that the insurer be held responsible for the alleged upward deviation from the discounted rate without the appellees' knowledge. *Id.*, at *6. This is precisely the focus of White's claims here, as she does not challenge the title insurance rates themselves but merely seeks to enforce the proper application of the discounted rate.

¶ 35 Based on the foregoing analysis, we find that the TICA does not provide an exclusive administrative remedy that must be exhausted prior to bringing a private action in the court of common pleas. White's claims are grounded in the UTPCPL, a statute that is not in conflict with the TICA merely because the claim relates to insurance rates. Consequently, the trial court's dismissal for failure to exhaust statutory remedies was improper.

¶ 36 Next, we briefly discuss why the doctrine of primary jurisdiction should not have been applied by the trial court to White's claims.

 ¶ 37 The doctrine of primary jurisdiction does not deprive the court of subject matter jurisdiction, but rather recognizes that when an issue within the jurisdiction of an administrative agency involves complex subject matter beyond the knowledge of judges and juries, it is best that the court refrain from exercising its jurisdiction until the agency has made a determination. *See Elkin v. Bell Telephone Co. of Pa.*, 491 Pa. 123, 131–34, 420 A.2d 371, 376–77 (1980). As this Court has stated:

> The doctrine of primary jurisdiction is to be distinguished from judicial dismissal or an action for failure to exhaust administrative remedies. Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone, while the doctrine of primary jurisdiction is a discretionary concept under which a Court stays judicial action until the administrative body has expressed its views upon such collateral issues as are within its competence.

*E.L.G. Enterprises Corp. v. Gulf Oil Co.*, 291 Pa.Super. 414, 435 A.2d 1295, 1296–97 (1981).

 ¶ 38 It is proper to utilize the doctrine of primary jurisdiction when the subject of the claim is within the agency's jurisdiction and where the matter is so complex it requires "special competence." *See Elkin*, 491 Pa. at 134, 420 A.2d at 377. However, we note this caveat:

> Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.' 'Expertise' is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility. The figure of the so-called 'expert'

looms ominously over our society—too much so to permit the roles of the court and jury to be readily relinquished absent a true fostering of the purposes of the doctrine of primary jurisdiction.

*Id.*

¶ 39 Finally, we note that "[p]rimary jurisdiction is a flexible doctrine, designed to coordinate the work of agencies and courts." *Com., Dept. of Environmental Resources v. Bethlehem Steel Corp.,* 469 Pa. 578, 593–94, 367 A.2d 222, 230 (1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 804 (1977). The purposes of the doctrine are to create consistent policy, to protect the regulatory scheme, to use the agency's expertise in complex areas outside the knowledge of judges and juries, and to further the legislative purpose behind the creation of the agency. *See Elkin,* 491 Pa. at 132–33, 420 A.2d at 376. The doctrine is not "a polite gesture of deference" and once an agency has made a determination of an issue, it is binding on the court and the parties. *See id.*

¶ 40 Here, we find there is no reason to conclude that the question of whether or not White and the class of consumers received the proper rate requires the special expertise of the Commissioner, and that it cannot be resolved by the trial court. Pursuant to Conestoga's manual, there are only three possible classifications of rates, each of which has specific criteria that must be met to qualify for any of these three rates. Indeed, we find that the trial court is sufficiently competent to simply apply the plain language of Conestoga's rate Manual to resolve whether or not White, and others similarly situated, were improperly denied the discounted refinance rate. If it is determined that the class of consumers received an inflated rate, it is solely within the province of the trial court to subsequently determine whether Conestoga engaged in deceptive and fraudulent business practices in violation of the common law and the UTPCPL.

¶ 41 For the reasons discussed above, we conclude that the trial court committed an error by dismissing White's claims with prejudice for failure to exhaust administrative remedies under 40 Pa.Stat. § 910–44 and was incorrect in applying the doctrine of primary jurisdiction to any extent.

¶ 42 Order reversed. Application to Strike Reply Brief granted. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.