420 A.2d 371

**Irving ELKIN, Assignee of Studio Photographers, Inc. of Pennsylvania, Appellant,**

**v.**

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Appellee.**

Supreme Court of Pennsylvania.

Argued April 14, 1980.

Decided July 11, 1980.

---

124

Michael Brodie, Vincent J. Fumo, Philadelphia County, for appellant.

Jerome J. Shestack, Philadelphia County, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

This litigation began on December 7, 1971. Studio Photographers, Inc. (Studio), assignor to Irving Elkin, the appellant, filed a four–count complaint in trespass in the Court of Common Pleas of Montgomery County against the Bell Telephone Company of Pennsylvania (Bell), appellee. The first count alleged Bell negligently failed to furnish Studio "reasonable, rapid and efficient service" with respect to three wide–area telephone service ("WATS") lines. Count two was based on Bell's alleged deliberate refusal to furnish Studio with adequate directory assistance information service.[1] The third and fourth counts alleged negligent failure of Bell's directory assistance service to furnish written telephone listings (i. e., telephone numbers) for prospective customers of Studio where Studio had submitted telephone listing requests for over 2,500 such customers. Damages, both compensatory and punitive, were demanded.

Bell filed preliminary objections to the jurisdiction of the court asserting that the matter was within the exclusive jurisdiction of the Pennsylvania Public Utility Commission (PUC). A court *en banc* entered an order which "stayed" the matter until "there is a determination of standards for the services involved by the [PUC] . . . ."[2]

1. Specifically, for Bell's refusal to supply more than one telephone listing per phone–call request.

2. The text of the order was as follows:
 And now, this 12th day of June, 1972, after argument before the court en banc and consideration of the briefs filed, proceedings in this matter are stayed until there is a determination of standards

A proceeding was commenced by the PUC, upon the complaint of Studio raising the same allegations contained in the complaint before the court. Following an evidentiary hearing and consideration of the briefs and arguments of the parties, the PUC rendered an adjudication and order dismissing the complaint, stating "[a]fter full consideration of all the facts of record the Commission is of the opinion and finds that [Studio] has failed to substantiate its allegations and that [Bell] has, in fact, provided [Studio] with a reasonably continuous and adequate telephone service . . . . "

No exceptions were filed to this PUC determination, nor was an appeal taken. Studio then had the aforementioned civil action listed for trial. Bell filed a motion for summary judgment, asserting *inter alia* that the complaint raised questions within the exclusive jurisdiction of the PUC and that the unappealed determination of these questions by the PUC was conclusive and could not be collaterally attacked in the Court of Common Pleas. This motion was denied.

Bell appealed the denial to the Superior Court which reversed the lower court and ordered judgment entered for Bell. *Elkin v. Bell Telephone Co.*, 247 Pa.Super. 505, 372 A.2d 1203 (1977) (opinion by Judge Jacobs; concurring opinion by Judge Spaeth).

This Court granted Studio's petition for allowance of appeal to determine the effect of the PUC adjudication of the standards of services involved upon the trespass action before the Court of Common Pleas, especially in light of our then–recent decision in *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977).

This case requires accommodation of the respective spheres of adjudicatory authority of the PUC and the Courts of Common Pleas where each has jurisdiction over some facet of the controversy. The PUC has long been recognized as the appropriate forum for the adjudication of issues involving the reasonableness, adequacy and sufficiency of

for the services involved by the Pennsylvania Public Utility Commission in accordance with Section 412 of the Public Utility Law (66 P.S. [§] 1182).

public utility services. *Behrend v. Bell of Pennsylvania*, 431 Pa. 63, 66, 243 A.2d 346, 347 (1968); *Duquesne Light Co. v. Monroeville Borough*, 449 Pa. 573, 581, 298 A.2d 252, 257 (1972); *Lansdale Borough v. Philadelphia Electric Co.*, 403 Pa. 647, 650–51, 170 A.2d 565, 566–67 (1961). The Public Utility Law has expressly granted the PUC the power to "prescribe as to service [3] and facilities . . . just and reasonable standards . . . to be furnished, imposed, observed, and followed by any or all public utilities . . . ." and upon finding, after reasonable notice and hearing, "that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory . . . ." the PUC "shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced or employed . . . ." Sections 412 and 413, respectively, of the Public Utility Law, *as amended* 66 P.S. §§ 1182, 1183 (1959) (replaced by 66 Pa.C.S. §§ 1504, 1505 (1978)).[4]

In spite of the PUC's rather extensive statutory responsibility for ensuring the adequacy, efficiency, safety and reasonableness of public utility services, we recognized in *Feingold v. Bell of Pennsylvania, supra,* that the Courts of

---

**3.** "Service" is defined quite broadly in the Public Utility Law. 66 P.S. § 1102(20) (1959) (replaced by 66 Pa.C.S. § 102 (1978)).

**4.** More fully, these sections provide:
§ 1182. Standards of service and facilities
The Commission may, after reasonable notice and hearing, upon its own motion or upon complaint, prescribe as to service and facilities . . . just and reasonable standards, classifications, regulations, and practices to be furnished, imposed, observed, and followed by any or all public utilities. . . .
§ 1183. *Proper service and facilities established on complaint.* Whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise *in* violation of this act, the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, *including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public, and shall fix the same by its order or regulation.*

Common Pleas have original jurisdiction to entertain suits for damages against public utilities based upon asserted failure to provide adequate services, even though the subject matter of the complaint is encompassed by the Public Utility Law. 477 Pa. at 7–11, 383 A.2d at 795–96. Traditional judicial remedies such as damages had been preserved by the Public Utility Law, *Id.*, 477 Pa. at 8–9, 383 A.2d at 795, 66 P.S. §§ 1357, 1500 (1959) (replaced by 66 Pa.C.S. § 103), and, since the legislature had withheld from the PUC the power to award damages, *Feingold v. Bell of Pennsylvania, supra,* 477 Pa. at 8, 383 A.2d at 794, this Court concluded that the courts must have jurisdiction over all damage actions.

The lower court apparently recognized the split jurisdiction and the advantages of referring the matter of the standards of services to the PUC, and so stayed the civil suit for damages pending a "determination [by the PUC] of standards for the services involved." We must now decide whether this bifurcated procedure was proper and, if it was, we will determine the effect of the PUC adjudication upon the litigation in the Court of Common Pleas.

■ Initially, we address appellant's argument, the entire thrust of which is that *Feingold* has ousted the PUC *for all purposes* in any case involving an action for damages.[5] Appellant's interpretation of *Feingold* is too broad and would "virtually strip" the PUC of all jurisdiction merely by framing the allegations in contractual and/or trespassory terminology, and demanding damages. As noted by Mr. Justice Pomeroy's insightful dissenting opinion in *Feingold* which expressed concern for such a sweeping interpretation, "[s]uch a result is unwarranted." *Id.*, 477 Pa. at 18, 383 A.2d at 800.

5. Appellant states "Of course, once we conclude that the Court of Common Pleas had jurisdiction originally in this action, we dispose of any issue arising from Studio's failure to appeal to the Commonwealth Court from the PUC Order of August 20, 1974 ... As *Feingold* now makes clear, this Order by the PUC was and is a nullity since original jurisdiction of plaintiff's complaint was in the Court of Common Pleas." Brief for Appellant at 13.

In *Feingold*, the case began as an action before the Court of Common Pleas of Philadelphia County seeking both injunctive relief and damages. Mr. Feingold asserted inadequate telephone service by Bell in several particulars. Bell filed preliminary objections and the trial court dismissed Feingold's complaint on the ground that he had failed to exhaust his administrative remedies with the PUC. We said "[t]he question presented by this case is whether appellant, seeking both legal and equitable relief against a public utility, should have *first* exhausted his administrative remedies under the Public Utility Law ... *before* seeking a judicial remedy." *Id.*, 477 Pa. at 5, 383 A.2d at 793. (emphasis added) In the posture of that case, we were primarily concerned with "the narrower issue of whether appellant had adequate *remedies* available under the Public Utility Law." *Id.*, 477 Pa. at 7, 383 A.2d at 794. (emphasis added).

Since, as noted, the PUC had no authority to award damages, appellant in *Feingold* had no adequate administrative remedy, and thus we held he had no duty to *first* exhaust administrative procedures *before* resorting to the courts. *Id.*, 477 Pa. at 10–12, 383 A.2d at 795–96. We had no occasion in *Feingold* to address the issue here presented. *Feingold*, therefore, poses no bar to the procedure adopted by the trial court in referring the standards of services issue to the PUC.

Appellant's simplistic notion ignores the reality that frequently *both* the courts and administrative agencies must each play roles in the adjudication of certain matters, and would have this Court ignore an adjudication of a competent Commonwealth administrative agency rendered after a full and fair evidentiary hearing and consideration of briefs and arguments of the parties, in an area peculiarly within the area of expertise entrusted to the agency by the legislature. This we will not do.

To accommodate the role of the court with that of the agency, the doctrine of primary jurisdiction (or primary exclusive jurisdiction) has been developed. Essentially, the doctrine creates a workable relationship between the courts

and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence. *Feingold v. Bell of Pennsylvania, supra,* 477 Pa. at 16, 383 A.2d at 798–99 (Pomeroy, J., dissenting) *and* Mezines, Stein and Gruff, Administrative Law, § 47.01[1] (1978) (hereinafter "Mezines"). This Court has approved the doctrine in *Weston v. Reading Co.,* 445 Pa. 182, 282 A.2d 714 (1977) (equity court must defer to Interstate Commerce Commission). In *Weston,* we stated:

> The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court "... recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge.... The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed." *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Trans–Atlantic,* 400 U.S. 62, 68, 91 S.Ct. 203, 208 [, 27 L.Ed.2d 203] (1970) (footnote and citations omitted). The doctrine "... requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 68, 77 S.Ct. 161, 165 [, 1 L.Ed.2d 126] (1956). (further citations omitted).

445 Pa. at 198–199, 282 A.2d at 723. (opinion of the Court by Roberts, J.)

 The doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special experience and expertise in complex areas with which judges and juries have little familiarity. *Mezines, supra* at § 47.02[2], citing *Great Northern R. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); Jaffe, *Primary Jurisdiction,* 77 Harv.L.Rev. 1037, 1040 (1964) (hereinafter "Jaffe"). Another important consideration is the statutory purpose in the creation of the

agency—the powers granted by the legislature and the powers withheld. *Jaffe, supra* at 1039. And, another fundamental concern is the need to promote consistency and uniformity in certain areas of administrative policy. *Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). It has been noted that these purposes are frequently served in, and the doctrine of primary jurisdiction principally applicable to, the controversies concerning the so–called "regulated industries." *Jaffe, supra* at 1039.

 It is equally important to realize what the doctrine is not—it is not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination. Rather, once the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels[6]), and is not subject to collateral attack in the pending court proceeding.[7] "The common law doctrine of res judicata, including the subsidiary doctrine of collateral estoppel, is designed to prevent the relitigation by the same parties of the same claim or issues." K. C. Davis, *Administrative Law*, § 18.10 (1972). Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may

6. Thus, in the instant case, Studio's right to seek appellate review of the PUC determination was not affected by the bifurcated procedure adopted. *See*, section 508(e) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.508(e) (appeals to Commonwealth Court from PUC adjudication) (replaced by the Judicial Code of 1978, 42 Pa.C.S. § 5105). "Thus review of the PUC action should proceed through the normally existing route of review (see *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973)." *Feingold v. Bell of Pennsylvania, supra*, 477 Pa. at 22, n.5, 383 A.2d at 801, n.5 (Pomeroy, J., dissenting).

7. "The pending action in the court of common pleas will not, of course, be used to relitigate the question of adequacy of services, but only to litigate such questions as were not resolved through administrative channels and to grant such relief, if any, including damages, as may be appropriate in light of the administrative determination." *Feingold v. Bell of Pennsylvania, supra*, 477 Pa. at 22, n.5, 383 A.2d at 801, n.5 (Pomeroy, J., dissenting).

continue, guided in scope and direction by the nature and outcome of the agency determination. *Feingold v. Bell of Pennsylvania, supra,* 477 Pa. at 22, 383 A.2d at 801 (Pomeroy, J., dissenting).

█ We must enter a caveat, however. Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's "expertise." "Expertise" is no talisman dissolving a court's jurisdiction. *Accommodation of the judicial and administrative functions does not mean abdication* of judicial responsibility. The figure of the so-called "expert" looms ominously over our society–too much so to permit the roles of the court and jury to be readily relinquished absent a true fostering of the purposes of the doctrine of primary jurisdiction.

█ Therefore, where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well–suited to determine, the court must not abdicate its responsibility. In such cases,[8] it would be wasteful to employ the bifurcated proce-

8. Examples include failure to provide *any* phone service, or failure to print name and number in phone directories, etc. In this respect, we must distinguish *Behrend v. Bell of Pennsylvania,* 431 Pa. 63, 243 A.2d 346 (1968). Although that case involved the omission of customers' names and numbers from the Pittsburgh phone directory, *the relief sought was not damages.* Complainant prayed, in equity, that Bell and the directory printers, the Reuben H. Donnelley Corporation, be compelled to republish or amend the phone directories, or, alternatively, to distribute corrections to all persons and entities who received the faulty directories. Given the nature of the relief sought, it was eminently more appropriate to have the PUC, endowed with authority to render such relief if proper, hear the case in the first

dure of referral, as no appreciable benefits would be forthcoming.

■ In the litigation before us, the allegations of Studio's complaint quite clearly involved an area where the PUC's expertise was needed—the adequacy and efficiency of WATS and directory assistance services. The competence of the agency in these areas is substantially greater than the court's, and the need for uniformity of policy is apparent.

■ Appellant had a full and fair evidentiary hearing, and consideration of briefs and arguments by the PUC. Their determination was that the applicable standards for the services involved had been met. Appellant had adequate opportunity to seek judicial review of this determination in Commonwealth Court, see note 5 supra. They did not. We will not now permit a collateral attack on the PUC determination in the Court of Common Pleas of Montgomery County.

For the foregoing reasons, the order of Superior Court reversing the denial of appellee's motion for summary judgment by the Court of Common Pleas of Montgomery County, and entering judgment for appellee, is affirmed.

EAGEN, C. J., and ROBERTS, J., filed concurring opinions.

NIX, J., filed a dissenting opinion.

EAGEN, Chief Justice, concurring.

I agree with Mr. Justice Roberts that a matter need not necessarily be "complex" before referral is appropriate. But, since I do not read Mr. Justice Larsen's opinion as requiring complexity as a prerequisite to referral, I join in his opinion.

Mr. Justice Larsen states "where subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence," referral is appropriate. He

instance. Matters such as peak–hour loads, WATS line distributions, rates, etc. are clearly within the purview of the PUC's expertise.

does not say noncomplex matters should never be referred and implies to the contrary when immediately following the "complex" language in his opinion, he indicates other factors should be considered such as "uniformity and consistency in agency policy and the legislative intent." Furthermore, Mr. Justice Larsen resolves the question of referral in this case, without reference to complexity, on the basis of expertise and uniformity.

As I read Mr. Justice Larsen's opinion complexity is only one factor to be considered and, with that understanding, I join his opinion.

ROBERTS, Justice, concurring.

I join that portion of the majority opinion holding that the Public Utility Commission (PUC) is the appropriate forum for resolution of appellant's claim. It is the clear mandate of the Legislature that claims of inadequate service are to be resolved by the PUC, the regulatory agency charged with the responsibility, and possessing the expertise, to adjudicate such claims. See Public Utility Law, Act of May 28, 1937, P.L. 1053, § 401, 66 P.S. § 1171 (1959). As recognized by the majority, the nature of the relief sought by an aggrieved customer of a public utility does not determine the tribunal which will adjudicate a claim of inadequate service. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977) (Roberts, J., dissenting).

It is of concern, however, that the majority's "test" for deferral may unnecessarily require courts preliminarily to determine whether a case "is a complex matter requiring special competence," or whether it is "one which the court or jury are equally well–suited to determine." It is my view that our courts must defer to the PUC in all cases presenting issues involving the reasonableness, adequacy and sufficiency of public utility services. This legislative allocation of jurisdiction promotes the quality, efficiency and integrity of both the administrative and judicial processes.

The doctrine of primary jurisdiction requires "judicial abstention in cases where protection of the integrity of a

regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia National Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963). Neither uniform regulatory policy nor the legislative objective can be achieved if courts and fact-finders throughout the Commonwealth are permitted to impose differing service standards in individual cases, merely because the issues presented are not "complex." Even in non–complex cases the statutory authority to adjudicate claims is vested in the PUC. Moreover, a regulatory agency, "by specialization, by insight gained through experience and by more flexible procedure," is far better equipped to clarify and resolve the issues underlying an inadequate service claim. *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

Thus, in any case involving the furnishing and maintenance of "adequate, efficient, safe and reasonable service and facilities," deferral to the PUC is not only appropriate but legislatively required. Where, as here, the PUC determines that the service rendered by the utility is adequate and reasonable, that determination, reviewable through the administrative process, is binding and conclusive. Where it is determined by the PUC that a utility's service falls short of the statutory standard, only in that instance may a court utilize that determination in a proceeding for damages.

NIX, Justice, dissenting.

We are, here again, faced with the question of the allocation of jurisdiction to hear and determine controversies arising between a utility and persons who are injured and sustain loss as a result of alleged tortious conduct of the utility in the performance of its service. Traditionally, the determination of whether conduct is negligent, thus exposing to liability the actor for injury or loss sustained as a consequence, has been a judicial judgment. Thus, in absence of a legislative mandate providing for an alternative forum for the resolution of these types of disputes, jurisdiction over the controversy resides in the courts.

We have previously considered and decided that the Public Utility Law, Act of May 28, 1937, P.L. 1053, art. I, § 1 *et seq.*, 66 P.S. § 1101 *et seq.*; now 66 Pa.C.S.A. § 101 *et seq.*, did not divest the Courts of Common Pleas of their original jurisdiction to entertain suits for damages against public utilities caused by the performance of their services in a negligent manner. *Feingold v. Bell of Penna.*, 477 Pa. 1, 383 A.2d 791 (1977). To the contrary, we stated "It is clear that the remedial and enforcement powers vested in the P.U.C. by the Public Utility Law were designed to allow the P.U.C. to enforce its orders and regulations but not to empower the P.U.C. to award damages or litigate a private action for damages on behalf of a complainant." *Feingold v. Bell of Penna., supra,* 477 Pa. at 10, 383 A.2d at 795 (footnote omitted). This separation of responsibility over distinctly different areas of concern has apparently been missed by the majority and their endorsement of a "referral procedure" is not only without legal jurisdiction, it is also inherently unsound. I therefore dissent.

The confusion appears to arise from the fact that the P.U.C. is charged with the duty to regulate the service of the utilities and to insure the adequacy, efficiency, safety and reasonableness of those services. It is argued that this obligation is somehow called into play where an assertion of negligence in the performance of the service has caused injury to a particular plaintiff who seeks redress for that loss. It is urged that the expertise of the P.U.C.[1] and the need to maintain uniformity requires the intervention of the

1. Even if the statutory scheme had provided for concurrent jurisdiction between the court and the administrative body, the question of the allocation of the jurisdiction should not be decided solely upon a belief that expertise is dispositive. "[T]he difficulty with expertise as a test for the applicability of rules, . . . is that it is a compass with an unvarying needle. Turn it whichever way, in whatever situation, it invariably points to primary jurisdiction" in the agency, *Convisser Primary Jurisdiction*: The Rule and Its Rationalizations, 65 Yale L.J. 315, 330 (1956).

It is to be emphasized that there is no question in this case of concurrent jurisdiction. As I read the statute, the legislature has withheld the power to the P.U.C. to award damages in this area. Thus, we are not faced with a question of primary jurisdiction.

administrative body. In my judgment this line of reasoning is fallacious.

The distinction between the role of the court and the P.U.C. was captured by the Superior Court when it stated:

The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts. *Behrend v. Bell Telephone Co.*, 242 Pa.Super. 47, 59, 363 A.2d 1152, 1158 (1976) vacated and remanded on other grounds, 473 Pa. 320, 374 A.2d 536 (1977).

Where the standard of care that governs the conduct in question has been articulated by a P.U.C. regulation or standard, the situation is no different from instances where statutes provide the standard, and the rules of evidence governing the admission and the effect of the pertinent statute should be equally applicable to a germane P.U.C. regulation or standard. Where the P.U.C. has not prescribed a standard for the service in the area in question, then an appropriate standard may be established by expert testimony as is traditionally done in matters of this nature.

The problems in this area are no more complex than many others which come before the court and are resolved in this fashion. Nor can it be argued that such a procedure would destroy uniformity. If there were no standard at the time, the court's determination of a standard would not conflict with any regulation or standard of the P.U.C. Thereafter, if the P.U.C. deems that a regulation is necessary, the court's ruling would not foreclose the P.U.C. from promulgation of a standard to govern future acts in the area. It is, therefore, my view that the novel and unique referral procedure initiated by the trial court and endorsed by the majority is entirely unnecessary for the proper resolution of the questions raised.

It is black letter law that a statutorily created agency or commission possesses only the jurisdiction conferred upon it by the creating legislative body. *Pennsylvania Human Relations Commission v. Mars Community Boys Baseball As-*

*soc.*, 488 Pa. 102, 410 A.2d 1246 (Opinion in Support of Affirmance); *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 382 A.2d 731 (1978); *Green v. Milk Control Comm'n.*, 340 Pa. 1, 16 A.2d 9 (1940). There is absolutely no statutory authority for the referral procedure. The authority relied upon by the trial judge, and apparently approved by the majority for the initiation of the P.U.C.'s jurisdiction in this case, was § 412 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, art. IV, § 412, 66 P.S. § 1182, now 66 Pa.C.S.A. § 1504. This section provides that, "The Commission *may*, after reasonable notice and hearing, upon its own motion or *upon complaint*, prescribe as to service and facilities, . . ., just and reasonable standards. . . ." (Emphasis added). Neither this section nor any other provision of the Public Utility Law requires the P.U.C. to serve as an adjunct to the court system.

Section 412 provides for the initiation of the process whereby the agency promulgates regulations and standards. The initiation of that process is only helpful in those instances where the P.U.C. had not previously promulgated regulations or standards for the conduct in question. For obviously, no purpose would be served by seeking promulgation of that which is already in existence. We note further that this section does not place upon the P.U.C. any responsibility to further explicate existing regulations.

Even in a situation where there is a vacuity of standards, I do not believe that the section relied upon is helpful for it creates a procedure so cumbersome as to be unsound.[2] The provision encompasses notice and hearing, and an appeal from the ultimate determination of the Commission to the Commonwealth Court.[3] By embracing the entire adminis-

**2.** Additionally, the referral procedure embraced by the majority defeats the effectiveness of the P.U.C. The effect of the majority's action is to place an entirely new area of responsibility upon that administrative body which was not envisioned by the General Assembly and thereby intrudes upon the time it may allocate to its statutorily prescribed duties.

**3.** The right to petition this Court for review from the Commonwealth Court ruling is also available to either party. 42 Pa.C.S.A. § 724(a).

trative process, the referral system contains an inordinate delay factor which is intolerable.[4]

It must also be noted that since Section 412 permits the triggering of this administrative process by complaint, the court would be put in the unique and questionable position of filing a complaint before an administrative tribunal on behalf of one or more of the litigants before it. Such a posture is obviously at odds with the objective rule that a court is expected to maintain.

In summary, it is my view that the decision today acknowledges a procedure which is not only unnecessary for the resolution of the matters before the Court, but also is totally without statutory warrant. The majority has further exacerbated the situation by creating a procedural device which is cumbersome and will unduly delay the disposition of claims of this nature.[5]

I would, therefore, remand to the Court of Common Pleas and require that this negligence suit be disposed of in the traditional manner.

4. It is conceivable that a referral procedure could be designed which is separate and apart from the normal administrative process and which would permit the Commission to respond directly to the court's inquiries in the matter. Such a procedure has not been provided for under the current Public Utility Law and is obviously something that must be legislatively, and not judicially, mandated.

5. The procedure approved in this case goes much farther than allowing the P.U.C. to define the standard. Without explanation, the P.U.C. determined a standard which was never articulated for the benefit of the litigants, and then proceeded to determine that it was not violated in this instance. I suggest that while the majority gives lip service to recognizing the court's role in resolving this controversy, it makes that role illusory by the judgment it reached. One also must wonder what happened to plaintiff's right of trial by jury in this case.