636 A.2d 642

## Carl R. BURNS and Nancy Burns, His Wife

### v.

## CONSOL PENNSYLVANIA COAL COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued June 24, 1993.

Filed Jan. 11, 1994.

264

Wesley A. Cramer, Washington, for appellant.

David C. Hook, Waynesburg, for appellees.

Before OLSZEWSKI, HOFFMAN and BROSKY, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order enjoining appellant Consol Pennsylvania Coal Company ["Consol"] from mining coal under four tracts of land owned by appellees, Carl and Nancy Burns ["the Burns"]. The dispute in this case boils down to whether the Pennsylvania Bituminous Mine Subsidence and Land Conservation Act, 52 Pa.S.A. § 1406.1, *et seq.* [hereinafter "the Subsidence Act" or "the Act"], requires Consol to include on a map its support plan for an undeveloped tract of land which is owed the right to support. The trial court held that Consol must indicate such support and issued the injunction pending Consol's compliance by filing an amended map with the Pennsylvania Department of Environmental Resources ["DER"]. It is from this order that Consol appeals and we affirm in part and remand with instructions.

It is undisputed that the Burns own, insofar as it is relevant here, two tracts of land. A dwelling sits on one tract, and the other is undeveloped. Consol owns the coal which underlies each tract, as this coal is part of the larger "Pittsburgh Seam" of bituminous coal, owned and controlled by Consol. The vital "third estate" to both tracts, the right to support, is owned by the Burns. Although Consol at one time negotiated with the Burns to obtain the support estate, which would have given it the right to subside the land, these negotiations were unsuccessful. Consol therefore properly concedes that it owes the Burns the absolute duty to protect their surface land from subsiding.

The Subsidence Act (which we will discuss in more detail later) provides certain surface structures, such as the Burns' dwelling, with protection from subsidence regardless of whether the owner of the property owns the support estate. *Albig v. Municipal Authority of Westmoreland Co.*, 348 Pa.Super. 505, 502 A.2d 658 (1985). Under the Act, it is incumbent upon the coal company which seeks to mine coal from areas under these protected structures to apply to DER for a permit. 52 Pa.S.A. § 1406.5. In doing so, the coal company must file a map with DER which fully details its mining plan and shows, among other things, the boundaries of the area of surface land and the location and/or designation of all structures in place on the effective date of the Act which overlie the proposed mine. 52 Pa.S.A. § 1406.5. The plan must also set forth a detailed description of the manner in which the structures overlying the mine will be supported. *Id.* The maps are also subject to any further requirements promulgated by DER, *id.*, must be filed with the Recorder of Deeds in the county which the mine is located, and must be updated at least once every six months. *Id.* at § 1406.8.

On or about September 15, 1992, apparently noticing that Consol's miners were approaching their property, the Burns went to the Recorder of Deeds in Greene County. They noticed that the most recent map of record was dated December 30, 1991, and it indicated that Consol intended to fully mine under both parcels of land. The Burns immediately filed

an action in the court of common pleas requesting a temporary restraining order, claiming that Consol had not properly updated its map. Moreover, the Burns claimed that Consol was required to indicate in its map how it intended to support their home and their undeveloped land. The restraining order issued, and in its defense at the hearing on a preliminary injunction, Consol claimed that although their updated map was not on file with the Recorder of Deeds, DER had already approved it. Although Consol offered no explanation why the map was not at the Recorder's office, its counsel brought a copy of the map to the hearing and argued that it properly showed the support it intended to provide for the Burns' dwelling. Consol also claimed that since the undeveloped tract is not specifically protected by the Subsidence Act, it was not required to indicate how it intended to support that land.

The trial court held that Consol is indeed required to show support for the Burns' vacant property on its map. It also held that the parties did not present sufficient evidence to determine whether Consol's proposed support for the Burns' surface structure was adequate under DER regulations. The Honorable H. Terry Grimes therefore entered an order which: (1) preliminarily enjoined Consol from mining under the Burns' property and (2) compelled Consol to amend its map to indicate its support plan for the Burns' vacant property. Judge Grimes deferred decision on the issue of whether the support for the Burns' dwelling was in compliance with DER regulations. This appeal followed and we affirm in part and remand with instructions.

## I.

### A.

Consol contends first that the court of common pleas did not have jurisdiction to issue the injunction because the Act vests exclusive jurisdiction with DER. Consol also contends, alternatively, that the Burns were required to exhaust their administrative remedies before applying to the trial court for an injunction. We disagree with both of these arguments.

■ It is abundantly clear from the plain language of the statute that jurisdiction to enforce the Act's provisions is not vested exclusively with DER. It provides:

Commonwealth Court and the courts of common pleas *shall* have the power to award injunctions to prevent violations of this act and to otherwise provide for its enforcement ... upon suit of any property owner affected by such bituminous coal mining without the necessity of posting bond on application for a permanent injunction, but a bond may be required on the granting of a temporary restraining order.

52 Pa.S.A. § 1406.13(a) (emphasis added). Although the application for permits and the right to promulgate rules to effectuate the Act's purposes is a matter which the Act contemplates to be within DER's "exclusive" jurisdiction, *see* § 1406.7, the mere existence of § 1406.13(a) indicates that the power to enforce the Act is distributed among DER, Commonwealth Court, and the courts of common pleas.[1]

■ The doctrine of exhaustion of administrative remedies, on the other hand, "is founded on judicial recognition of the mandate of the legislature that statutorily prescribed remedies are to be strictly pursued." *Ohio Casualty Group v. Argonaut Ins. Inc.*, 514 Pa. 430, 435, 525 A.2d 1195, 1197 (1987). Our Supreme Court has held that although the Subsidence Act provides comprehensive administrative remedies with DER, "[i]t is apparent that where the Legislature desired to provide an exclusive administrative remedy within the Act it did so explicitly." *DeLuca v. Buckeye Coal Co.*, 463 Pa. 513, 345 A.2d 637 (1975). Although the statute clearly gives a landowner the right to pursue a hearing in front of DER's Environmental Hearing Board,[2] there is nothing in the lan-

---

**1.** Consol made a belated attempt, at oral argument and in its reply brief to this Court, to argue that the injunction should be vacated because the trial court did not require the Burns to post bond. Although we recognize that bond must ordinarily be posted before a preliminary injunction may issue, § 1406.13 of the Act, *supra*, makes the posting of bond permissive. We find no abuse of discretion in the trial court's failure to require bond in this case.

**2.** Section 1406.16 of the Act provides that "... any landowner ... which shall be aggrieved or affected by any administrative rule, regula-

guage of the statute which makes this pursuance a condition precedent to seeking injunctive relief before a court of common pleas. To the contrary, we are required to interpret the statute broadly to ensure that all landowners and other affected persons receive the intended benefit of the Act. 52 Pa.S.A. § 1406.19. The Burns were not required to exhaust their administrative remedies before seeking injunctive relief in the court of common pleas.

## B.

■ The tenor of Consol's argument, that DER is the proper body to address the Burns' complaints regarding the sufficiency of the maps, is appealing. That is, by focusing on exclusive jurisdiction (or jurisdiction that is dependent on previous DER involvement), Consol effectively asks us to divest the courts of common pleas of all power if a landowner does appeal to DER first. Accepting this proposition would effectively strip the court of common pleas of its equity power, and hence, the power of contempt. We held above that this is not the intent of the statute and we would be wary of divesting the courts of this power absent a clear legislative intent to do so. We do recognize, however, that DER has the experience and sophistication to meaningfully regulate the bituminous mining industry in accord with the policies espoused by the Subsidence Act. The legislature, moreover, did vest DER with substantial power to promulgate and adopt rules that serve the Act's purpose. It also provided the DER Environmental Quality Board with the power to adopt emergency regulations which amount to "legislative oversight." 52 Pa. S.A. § 1406.18. We now hold, therefore, that DER has primary jurisdiction to entertain landowners' complaints regarding coal companies' specific compliance with regulations promulgated under the Act.

tion, or order of the department issued pursuant to the provisions of the Act, *shall have the right to appear* at any hearing before the Environmental Hearing Board at which the secretary shall reconsider said action." (Emphasis added.)

The doctrine of primary jurisdiction applies where the administrative agency cannot provide a complete means of redress to the complaining individual, "and yet the dispute involves issues that are clearly best resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." *Ostrov v. I.F.T., Inc.,* 402 Pa.Super. 87, 95, 586 A.2d 409, 413 (1991). Our Supreme Court has recognized that, in reality, both the courts and the administrative agencies play important roles in the adjudication of certain matters.

> To accommodate the role of the court with that of the agency, the doctrine of primary jurisdiction (or primary exclusive jurisdiction) has been developed. Essentially, the doctrine creates a workable relationship between the courts and administrative agencies, wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence.

*Elkin v. Bell Telephone Co.,* 491 Pa. 123, 131–32, 420 A.2d 371, 376 (1980).

This doctrine has distinct application here because the issues at hand involve both an interpretation of the Act and DER's expertise. On one hand, the court of common pleas is perfectly capable of determining whether Consol's maps are recorded and updated within the time prescribed by the Act. On the other, questions of whether the maps are in technical compliance with DER's regulations require the expertise of trained professionals employed for that specific purpose. DER is far better equipped to handle these questions. In such a case, the better course is for the court of common pleas to stay the action before it until the administrative body makes a ruling. *Id.* at 133, 420 A.2d at 377.

■ The trial court therefore properly issued an injunction based on the map's absence from the Recorder of Deeds. Without its presence, Consol would be mining in direct violation of the Act, since maps must be filed at least ten days before any mining occurs under the areas represented by the maps. The trial court should not have determined whether

Consol is required to show its support for the vacant Burns property on its map.[3] Nor should it endeavor to determine whether the maps are in technical compliance with DER's regulations regarding support. Since these latter questions involve DER's expertise, we feel that DER should address them in the first instance.[4]

## II.

Consol argues next that it is not required, under the Act, to show support for the Burns' vacant parcel of property on its map. Consol argues that the Act was intended to provide a right of support to structures only, not vacant lands. Thus, it would follow that the maps required by the Act need not indicate how Consol intends to support the vacant land. Consol argues that this is so despite its acknowledgment that it owes the Burns a duty to support that land as a matter of general property law. For the reasons that follow, we will require the trial court to defer resolution of this issue to DER.

We note first that the trial court decided this issue in the affirmative, holding that DER's regulations specifically require that a mining company represent on its map all boundaries of its mining activities. Trial court opinion at 3 (citing 24 Pa.Code § 89.142(b)(5)). The trial court reasoned that since Consol is required to show all of the areas within its mining operation where it will not mine, it must necessarily include the coal under the Burns' vacant land. This reasoning, sound as it is, rests on the erroneous assumption that the Burns own the coal under their property. They do not. They own only the support rights. The trial court wrote:

In the present case, it is undisputed that the mining map filed with the Recorder of Deeds did not contain an exclu-

3. For further discussion of this issue, see part II, below.

4. Consol contends that its maps were already approved by DER. Although this appears to be true, the Burns have not had the opportunity to apply to the DER and contest certification of the maps. They clearly have the right to do so, as § 1406.16 gives them the right to appeal any administrative action and upon this appeal DER "shall reconsider said action." 52 Pa.S.A. § 1406.16.

sion from the mining activity from the coal underlying the Burns [vacant] tract, coal which is not owned nor controlled by Consol.

* &ast; * * * *

The only aid which a landowner who owns coal beneath their property, or is guaranteed subsidence protection thereunder, may have is the mine plan filed of public record. To accept Consol's argument that they must only indicate areas which they must support but need not indicate areas not owned by them nor subject to mining is contrary to any logical explanation.

Trial court opinion, at 3.

While we agree with this reasoning it is inapplicable here because Consol does control the coal under the Burns' property. Moreover, Consol offers a perfectly logical explanation regarding why it is not required to indicate the manner of support for the Burns' vacant land: neither the Subsidence Act nor its concomitant regulations require it to do so. Since the trial court's analysis is inapposite here, we must address this issue on a clean slate.

■ As we alluded earlier, the Subsidence Act grants owners of certain surface structures (including dwellings such as the Burns' here) the absolute right to support from mine subsidence, regardless of whether the structure owner owns the support estate. 52 Pa.S.A. § 1406.4; *DeLuca, supra.*

> The Act was established to (1) conserve land area (2) protect the public (3) enhance the value of surface lands (4) aid in providing surface water drainage and public water supplies (5) improve the use and enjoyment of surface lands and (6) maintain primary jurisdiction [over surface coal mining in Pennsylvania].

*Culp v. Consol Pennsylvania Coal Co.,* 96 Pa.Commw. 94, 100, 506 A.2d 985, 988 (1986). Our legislature has identified seven enumerated policies which underlie the passage of the Act, including pronouncements that "[t]he protection of surface structures and better land utilization are of utmost importance to Pennsylvania," 52 Pa.S.A. § 1406.3(1), and "[t]he prevention

of damage from mine subsidence is recognized as being related to the economic well-being of Pennsylvania." *Id.* at § 1406.3(3).

■ A coal mine may not open unless it is granted a permit upon application to DER. *Id.* at § 1406.5. Such application necessarily includes a map which designates all areas which the company intends to mine. *Id.*

> Such map or plan shall show the boundaries of the area of surface land overlying the mine or mining operation, the location and/or designation of all structures in place on the effective date of this act which overlie the proposed mine or mining operation, the name of the record owner of such surface structures, the location of all bodies of water, rivers and streams, roads and railroads, and the political subdivision and county in which said structures are located. Such map or plan shall include, in addition to the information specified above, such information on the character of the mining operation, overburden, rock strata, proximity of and conditions in overlying or underlying coal seams and other geological conditions as the department, by rules and regulations, shall direct. The department shall have the power to require the updating of such maps from time to time as it shall prescribe by rule and regulation. *The map or plan must set forth a detailed description of the manner, if any, by which the applicant proposes to support the surface structures overlying the bituminous mine or mining operation.*

*Id.* (Emphasis added.) Noticeably absent from this language is any requirement that the map or plan indicate how it intends to support vacant lands which overlie the mine. Section 1406.8 of the Act, which describes these maps more thoroughly, is equally silent: "Such maps or plans shall show in detail all contemplated workings which are intended to be undertaken or developed within the succeeding six months and shall show, distinctively and in detail, all supports, artificial and otherwise, *to be provided in accordance with the permit.*" *Id.* (Emphasis added.) As we just recited at length, a coal

company's mine plan need not, as a matter of necessity, show its support for vacant lands before a permit will issue.

Nonetheless, it seems anomalous that the legislature has made a broad declaration that the protection of surface lands is vital to the economy of Pennsylvania, yet when those lands are entitled to support as a matter of law, there is no requirement that the coal company include that support on its map. Indeed, the maps must show "all contemplated workings" under surface lands, *id.*, and the coal company is required to notify all owners of surface lands of its operations and the locations of their certified maps, *id.* at § 1406.10. This section was presumably intended to give a landowner the chance to assure himself that his lands, if entitled to it, receive support. A requirement that a coal company show how it intends to support vacant lands which are entitled to support, therefore, would be well within the purpose of the Act. It should not matter, furthermore, from where the duty of support arose. But, alas, a plain reading of the statute provides no such requirement.[5] It is a fundamental tenet of statutory construction, moreover, that we have no power to insert a requirement into a statute that is not there. *Worley v. Augustine*, 310 Pa.Super. 178, 456 A.2d 558 (1983). We simply cannot hold, as a matter of statutory interpretation, that the Act requires Consol to include its manner of support for vacant lands on the map, even though it seems that such a requirement is eminently reasonable.

Thus it is that we shall defer this matter to DER. The Act is clear that DER has the power to enact regulations "as shall be necessary to protect the . . . land resources of the Commonwealth" and "to enable it to carry out the purposes and provisions of this act, including additional requirements for providing maps, plans, and public hearings." 52 Pa.S.A.

---

5.  A review of DER's current regulations are silent on the issue as well. *See* 25 Pa.Code § 89.142. This regulation does, however, include a catch-all provision which requires coal companies to identify on their maps "[o]ther information as requested in accordance with the policies and procedures of the department." We see no reason why the department, as discussed *infra*, could not require a mining plan to include the support for vacant lands that are entitled to support as a matter of property law.

§ 1406.7. Moreover, DER is vested with a quasi-legislative jurisdiction which enables it to enact legislation which appears to have been overlooked by the Act. Finally, and perhaps more simply, the department has reserved to itself the option to require of a coal company to include in its map any "other information as requested in accordance with the policies and procedures of the department." 25 Pa.Code § 89.142(b)(7). In other words, despite any specific requirement under the words of the Act, it is abundantly clear that Consol could be required to show the support for the Burns land on its map. Were we to merely interpret the Act and hold that under no circumstances is Consol required to show this support, we would not only usurp DER's broad enforcement power (which is not limited to the plain words of the Act), but we would also frustrate the balance of administrative and judicial duties that the legislature sought to achieve in the first place.

We therefore hold that although the Act contains no requirement that Consol indicate its manner of support for the Burns' vacant property, such a requirement is well within the scope of the Act. This matter should therefore be deferred to DER which, upon application of the Burns, shall determine whether Consol should be required to include this information on its map.

### III.

Finally, Consol contends the injunction was improperly issued because the Burns suffered no harm. Consol argues that its assurances at the hearing on the preliminary injunction, that it would not mine under the Burns' property, render any appreciable harm purely speculative. We disagree.

█ We will allow a preliminary injunction to stand if there are any appreciable grounds for the trial court's action. *Coatesville Development Co. v. United Food Workers,* 374 Pa.Super. 330, 542 A.2d 1380 (1988). Here, the harm the Burns complained of was plain—Consol was mining without having first recorded a certified map with the Greene County Recorder of Deeds. Although Consol argued that the map

was certified and filed, it was not in the Recorder's possession. Since the Subsidence Act is designed to protect landowners of surface structures entitled to support, such as the Burns, it is Consol who must bear the burden of the map's absence. If it mines under the Burns' property without a map on file, it is in violation of the Act. The trial court has the appropriate means, injunction power, to compel compliance.

The Burns also contend that their property is subject to potential subsidence based on Consol's failure to indicate how it intends to support their vacant property. Although we have already indicated that this matter should be deferred to DER, we find that an injunction prohibiting Consol from proceeding in the vicinity of the Burns' property pending the outcome of the DER appeal is appropriate. Once DER has heard the matter and Consol has filed maps which comply with the DER's findings, the injunction shall be dissolved.

## IV.

We therefore affirm the trial court's order insofar as it enjoins Consol from mining under the Burns' property. DER shall, upon Burns' application, determine whether Consol is required to show its manner of support for the Burns' vacant lot. DER shall also determine whether Consol's map shows proper support for the Burns' dwelling. Once the DER proceedings are final and the Greene County Court of Common Pleas is satisfied that Consol's maps are certified and properly filed with the Recorder of Deeds, the injunction shall be dissolved.

Jurisdiction is relinquished.